UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| In re: | * |
| | * |
| PHILIP WAYNE DORTON, | *      Chapter 7 |
| | * |
| Debtor(s). | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| | * |
| KEVIN R. McCARTHY, TRUSTEE, | * |
| | * |
| Appellant, | * |
| | * |
| vs. | *      Case No. 1:05-cv-01409 |
| | *      Judge Gladys Kessler |
| BMW BANK OF NORTH AMERICA, | * |
| | * |
| Appellee. | * |
| | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**APPEAL FROM U.S. BANKRUPTCY COURT**

_____

**BRIEF OF APPELLANT**

_____

Kevin R. McCarthy, No. 218149
McCarthy & White, PLLC
8180 Greensboro Drive, Suite 875
McLean, VA 22102
(703) 770-9261
Attorneys for Appellant, Kevin R. McCarthy, Trustee

Table of Contents

Table of Authorities                                                                                    iii

Statement of Basis of Appellate Jurisdiction                                             1

Statement of Issues Presented and Applicable Standard for Appellate Review      1

Standard of Appellate Review                                                              1

Statement of the Case                                                                      1

Argument                                                                                    2

    A.  D.C. Code §§ 28:9-308 And 9-311 Make D.C. Code § 50-1202        2
        The Exclusive Means For Perfection Of Security Interests In
        Consumer-Purchased Cars.

        Applicability of Article 9 of the Uniform Commercial      3
        Code to Cars.

        Compliance with D.C. Code §§ 50-1201 *et. seq.*          3
        ("DMV Statute") as the exclusive means of perfection
        of a security interest in a car.

    B.  Neither the Uniform Commercial Code Nor The DMV Statute    5
        Allows Perfection Of A Security Interest In A
        Consumer-Purchased Car Under The Common Law.

        Displacement of the common law by the Uniform            8
        Commercial Code and the DMV Statute.

    C.  Comment No. 5 To Section 9-311 Makes Clear There Is       12
        An Unperfected Gap Period Under the District's Unamended
        DMV Statute.

    D.  The Bankruptcy Court Misconstrued The DMV Statute's       14
        Exclusion For The Creation And Perfection Of Judicial Liens
        As An Exclusion For The Priority Of Judicial Liens.

        Uniform Commercial Code as sole source of priority       14
        rules for security interests in cars, and inconsistency
        between common law rule and Uniform Commercial
        Code distinctions between perfection and priority.

Lack of any time limit for application under the Bankruptcy Court's approach.                          17

The Bankruptcy Court's divergence from the District Court's Waiters decision.                          17

Conclusion                                                                                             18

Exhibit A                                                                                            Ex. A

Exhibit B                                                                                            Ex. B

Exhibit C                                                                                            Ex. C

Exhibit D                                                                                            Ex. D

Exhibit E                                                                                            Ex. E

Addendum of Statutes Cited                                                                             x-1

Table of Authorities

CASES                                                          Page

Albert v. Nissan Motor Acceptance Corporation (In re Waiters),    17
Civil No. 02-1588 (RWR) (D.D.C. July 12, 2004)
(Attached at Exhibit "E")

District of Columbia v. Franklin Investment Co., Inc.,            12
404 A.2d 536 (D.C. 1979)

In re Farnham, 57 B.R. 241 (Bankr. D.Vt. 1986)                   10, 11

Hanrahan v. Arcadia Financial Ltd. (In re Scott)                 11
245 B.R. 331 (Bankr. N.D.Ia. 2000)

In re Hurst, 308 B.R. 298, 303 (Bankr. S.D.Oh. 2004)            8

North v. Desert Hills Bank (In re North),                        10
310 B.R. 152, 159 (Bankr. D.Az. 2004)

Pioneer Inv. Services v. Brunswick Associates Ltd. Part.,        7
507 U.S. 380, 388 (1993)

Tidwell v. First Community Bank of Georgia                       11
(In re Charley's Automotive, Inc.), 2003 WL 21058331
(Bankr. M.D.Ga. 2003)

Union Bank & Trust Co. v. Baker (In re Tressler)                 11
771 F.2d 791 (3rd Cir. 1985)


STATUTES

D.C. Code § 28:9-102(52)                                         9-14

D.C. Code § 28:9-308                                             1, 2

D.C. Code § 28:9-308(a)                                          3

D.C. Code § 28:9-309                                             3

D.C. Code § 28:9-310 – 28:9-316                                  3

D.C. Code § 28:9-311                                             1, 2, 12

| | |
|---|---|
| D.C. Code § 28:9-311(b) | 6, 7 |
| D.C. Code § 28:9-317 | 15 |
| D.C. Code § 28:9-317(a)(2)(A) | 14 |
| D.C. Code § 28:9-328 | 9 |
| D.C. Code §§ 50-1201 *et. seq.* | 1,3,4 6, 7, 14, 16 |
| D.C. Code §§ 50-1202 | 1, 2, 6, 7, 15, 16, 18 |
| U.C.C. § 1-103 (Official Text with Comments attached as Exhibit "C") | 9 |
| U.C.C. § 9-302 | 4 |
| U.C.C. § 9-303 | 12, 13 |
| U.C.C. § 9-303, cmt. n.6 | 13 |
| U.C.C. § 9-308(a) | 5, 17 |
| U.C.C. § 9-308(c) | 5 |
| U.C.C. § 9-310 through 9-316 | 3, 5 |
| U.C.C. § 9-311 | 3-5, 13-15, 18 |
| U.C.C. § 9-311 (rev) | 4 |
| U.C.C. § 9-311, cmt. n.5 | 12, 17 |
| U.C.C. § 9-316(d)&(e) | 13 |
| U.C.C. § 9-317 | 1, 9, 15, 18 |
| U.C.C. § 9-317(a)(2)(A) | 16 |

U.C.C. § 9-328                                                                                    9

11 U.S.C. § 547(c)(3)                                                                             2

11 U.S.C. § 547(e)(1)(B)                                                                          9, 14

11 U.S.C. § 547(e)(2)(B)                                                                          2

28 U.S.C. § 158(a)                                                                                1


OTHER PUBLICATIONS

Eldon H. Riley, 1 <u>Security Interests in Personal Property</u> § 15:1                           4
(Westlaw 2002)
(Attached as Exhibit "A")

Eldon H. Riley, 1 <u>Security Interests in Personal Property</u> § 15:22                          12
(Westlaw 2002)
(Attached as Exhibit "D")

U.C.C. Text PEB, Commentary No. 6                                                                 9
(Attached as Exhibit "B")

STATEMENT OF BASIS OF APPELLATE JURISDICTION

Jurisdiction of this Court is based on 28 U.S.C. § 158(a).  This is an appeal from a final

judgment of the Bankruptcy Court.

STATEMENT OF ISSUES PRESENTED
AND APPLICABLE STANDARD FOR APPELLATE REVIEW

1.  Whether D.C. Code §§ 28:9-308 and 28:9-311 make D.C. Code § 50-1202 the

exclusive means for perfection of security interests in consumer-purchased cars.

2.  Whether either the Uniform Commercial Code or D.C. Code §§ 50-1201 *et. seq.*

allows perfection of a security interest in a consumer-purchased car under the common law.

3.  Whether there is an unperfected gap period under D.C. Code § 50-1202.

4.  Whether the priority rules of Section 9-317 of the Uniform Commercial Code govern

consensual security interests and judicial liens in consumer-purchased cars.

STANDARD OF APPELLATE REVIEW

The applicable standard of appellate review for each of the issues presented is *de novo*

because each is a question of law.  The Bankruptcy Court made no disputed finding of fact that

affected its decision.

STATEMENT OF THE CASE

Appellant Kevin R. McCarthy, Chapter 7 Trustee for Debtor Philip Wayne Dorton in

Case No. 04-00151 on the docket of the Bankruptcy Court, brought an action against BMW

Bank of North America ("BMW Bank") to avoid its security interest as to the Debtor's interest in

a 2000 BMW 328i.  The Debtor and another individual purchased the car and took possession of

it on October 13, 2003 under a contract in which they granted a security interest to the dealer

from whom they purchased the car. The dealer assigned the contract to BMW Bank. On behalf of BMW Bank the dealer applied to the District of Columbia Department of Motor Vehicles for a Certificate of Title. The District of Columbia Department of Motor Vehicles issued a Certificate of Title dated December 24, 2003 for the car noting the security interest of BMW Bank. The Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code on January 30, 2004. The bankruptcy estate has no assets other than the action brought by the Trustee. Allowed filed proofs of claim in the case exceed $20,000.

The Trustee brought his action under Section 547 of the Bankruptcy Code based on the theory that, as a result of issuance of the Certificate of Title on December 24, 2003, BMW Bank's security interest in the car was not perfected until that date, which was within the 90-day preference period but outside the ten-day and twenty-day safe harbor relation-back periods of 11 U.S.C. § 547(e)(2)(B) and 11 U.S.C. § 547(c)(3). The Trustee moved for summary judgment on the authority of prior decisions by the Bankruptcy Court as well as a prior decision by Judge Roberts of this Court. However, the Bankruptcy Court denied the Trustee's motion and dismissed the complaint because, changing its prior view of applicable law, it concluded that BMW Bank's security interest was perfected under the common law from the time the Debtor purchased and took possession of the car until issuance of the Certificate of Title. This is an appeal from the Bankruptcy Court's decision.

## ARGUMENT

A.  <u>D.C. Code §§ 28:9-308 And 28:9-311 Make D.C. Code § 50-1202 The Exclusive Means For Perfection Of Security Interests In Consumer-Purchased Cars</u>.

The Trustee disputes the Bankruptcy Court's decision solely on the question of whether, in the District of Columbia, a consumer-purchased car may be subject to a perfected security

interest prior to the issuance of a certificate of title noting the security interest.  The Bankruptcy

Court, citing the common law, answered this question in the affirmative.  In contrast, the Trustee

asserts that the District of Columbia's Uniform Commercial Code displaces the common law and

explicitly answers this question in the negative.

        Applicability of Article 9 of the Uniform Commercial Code to cars.  There is no question

that the Debtor's car is personal property covered by Article 9 of the Uniform Commercial Code.

Opinion 2 at 9.[1]  The following language, then, applies:

> Except as otherwise provided in this section and § 28:9-309, a security interest is
> perfected if it has attached and **all of the applicable requirements for perfection in
> §§ 28:9-310 through 28:9-316 have been satisfied**.  (Emphasis added.)

D.C. Code § 28:9-308(a).

        The exceptions referred to in D.C. § 28:9-308(a) do not apply here.  Therefore, the

section necessarily means that the only way to perfect a security interest in the Debtor's car is to

comply with the applicable perfection requirements in Sections 9-310 through 9-316.[2]  In other

words, there is no room within this language for the common law to provide an alternate way to

perfect a security interest in a car.

        Compliance with D.C. Code §§ 50-1201 *et. seq.* ("DMV Statute") as the exclusive means

of perfection of a security interest in a car.  The only applicable perfection requirements in

Sections 9-310 through 9-316 are found in Section 9-311, which refers to D.C. Code §§ 50-1201

*et seq.* ("DMV Statute").  The Bankruptcy Court characterized this interaction between the UCC

---

[1] The Bankruptcy Court's Opinion Regarding Dismissal Of Adversary
Proceeding, dated June 21, 2005, Docket Entry No. 12, will be
referred to as Opinion 2.  The Bankruptcy Court's Opinion
Regarding Plaintiff's Motion For Summary Judgment, dated May 3,
2005, Docket Entry No. 15, will be referred to as Opinion 1.
[2] References to the sections of the Uniform Commercial Code are
references to Title 28 of the District of Columbia Code.

3

and the DMV Statute as the "UCC's election to treat § 50-1201 *et seq.* as providing the exclusive

requirements regarding perfection of a security interest in a consumer-purchased motor vehicle."

Opinion 1 at 13. The Trustee fully agrees with this characterization, as does Eldon H. Riley in 1

Security Interests in Personal Property § 15:1 (Westlaw 2002) (attached as Exhibit A). Mr. Riley

describes Section 9-311 as "indicating that compliance with state certificate of title laws is the

exclusive method of perfection" except in certain instances where a vehicle is inventory or in the

secured party's possession.

There is no question that the Bankruptcy Court, Eldon H. Riley, and the Trustee are all

correct in concluding that compliance with the DMV Statute is the sole means of perfecting a

security interest in a consumer-purchased car in the District of Columbia. Section 9-311(b)

provides, with inapplicable exceptions, that "a security interest in property subject to a statute,

regulation, or treaty described in subsection (a) [which refers to Section 50-1201 *et seq.*] **may be**

**perfected only by compliance with those requirements** . . . ." (Emphasis added.)

The UCC, acting in concert with the DMV statute (not the common law), governs the

creation, perfection, and effect of a security interest in a consumer-purchased car. Another way

to describe this interaction between the UCC and the DMV statute is to say that the UCC

incorporates the DMV statute as the method of perfection but governs covered transactions in all

other respects, including rules of priority. "The state title laws are part of the Article 9 perfection

system. Article 9 in §§ 9-302, and 9-311(rev), adopt state title laws as the Article 9 method of

perfection for those situations to which the title laws apply." Eldon H. Riley, 1 Security Interests

in Personal Property § 15:1 (Westlaw 2002) (attached as Exhibit A).

B.  Neither the Uniform Commercial Code Nor The DMV Statute Allows Perfection Of A Security Interest In A Consumer-Purchased Car Under The Common Law.

By engrafting a common law method of perfection in a car onto the Uniform Commercial Code and the DMV Statute, the Bankruptcy Court went outside both the UCC and the DMV statute.  The result reached by the Bankruptcy Court is contrary to the express language of Section 9-308(a) (perfection occurs when applicable requirements of Sections 9-310 through 9-316 have been satisfied), the Bankruptcy Court's own characterization (in Opinion 1) of the UCC-DMV Statute interaction as providing the exclusive means of perfection of a security interest in a consumer-purchased car, and the express language of Section 9-311 (compliance with the DMV Statute is the sole means of perfection).  The common law method of perfection is nowhere to be found in Sections 9-310-through 9-316 and is nowhere to be found in the DMV Statute.  **By definition, a common law method of perfection cannot be the product of an exclusive statutory perfection scheme.**

The Bankruptcy Court relied on Section 9-308(c)—the continuous perfection provision of the UCC—to support its conclusion that the perfection of BMW Bank's security interest in the Debtor's car by notation on the certificate of title was merely the substitution of one method of perfection (certificate) for another (common law) without interruption.  Opinion 2 at 22. However, the explicit language of Section 9-308(c) in fact contradicts the Bankruptcy Court's conclusion.  Section 9-308(c) states, "A security interest . . . is perfected continuously if it is originally perfected by one method **under this article** and is later perfected by another method **under this article**, without an intermediate period when it was unperfected."  (Emphasis added.) Again, nowhere in Article 9 is there a provision for the common law perfection of a security interest in a consumer-purchased car.

The Bankruptcy Court, however, concluded that the common law rule of first-in-time is first-in-right nonetheless applied because "Section 50-1202 itself imposes no requirement for perfecting a lien prior to issuance of a certificate of title."  Opinion 2 at 9.  In the Bankruptcy Court's view, "by not displacing the common law rule and leaving it intact, § 50-1201 *et seq.* *implicitly* provide that prior to issuance of a certificate of title, the only required step to perfect a security interest in a car is the common law requirement."  Opinion 2 at 19.  But that is not what the statute says.  The statute says nothing about the situation prior to issuance of a car title.  The DMV Statute itself, then, does not provide for the perfection of a security interest in a consumer-purchased car prior to the issuance of a certificate of title.

The failure of the DMV Statute to provide for the perfection of a security interest in a consumer-purchased car prior to the issuance of a certificate of title is dispositive of this appeal. Section 9-311(b) of the District of Columbia's Uniform Commercial Code provides, "Compliance with the requirements of a statute, regulation, or treaty described in subsection (a) [including D.C. Code §§ 50-1201 *et. seq.*] is equivalent to the filing of a financing statement under this article. . . .  [A] a security interest in property subject to a statute, regulation, or treaty described in subsection (a) may be perfected only by compliance with those requirements . . . ."

**If the only way to perfect a security interest in a consumer-purchased car is to comply with the requirements of the DMV Statute, and if the DMV Statute imposes requirements only upon issuance of the certificate of title, it follows that there is no way to perfect a security interest in a consumer-purchased car prior to the issuance of a certificate of title.**  Again, by definition, a common law method of perfection, whatever its merits might be from a public policy standpoint, is not a statutory method of perfection.  One does not comply

with the requirements of a statute by resorting to the requirements of common law nowhere mentioned in the statute.

The legislature (Congress at the time) obviously intended to dovetail D.C. Code § 50-1202 with D.C. Code § 28:9-311(b).  The former statute says that the filing provisions of Article 9 of the Uniform Commercial Code do not apply "to liens recorded as herein provided" and that "a lien has no greater validity or effect during the time a certificate is outstanding for the motor vehicle or trailer covered thereby by reason of the fact that the lien has been filed in accordance with that article."[3]  The latter statute, which is quoted on page 6 above, says that compliance with D.C. Code §§ 50-1201 *et. seq.* is the equivalent of the filing of a financing statement and that the only way to perfect a security interest in a car is to comply with D.C. Code §§ 50-1201 *et. seq.*

What the District of Columbia has, then, is an elaborate statutory scheme where the Uniform Commercial Code and the DMV Statute dovetail with each other, not with the common law.  Together, they provide the exclusive means to perfect a security interest in a car:  notation of the security interest on a certificate of title.  Together, they even *say* they are the exclusive means to perfect a security interest in a car.  This should be enough to make clear that they do not allow the common law to provide an alternate means of perfection before a certificate of title is issued.  Absent contrary indications, courts should assume that words carry "'their ordinary, contemporary, common meaning.'"  Pioneer Inv. Services v. Brunswick Associates Ltd. Part., 507 U.S. 380, 388 (1993).

---

[3] The second phrase quoted even suggests that, contrary to the Bankruptcy Court's conclusion and the Trustee's own understanding of D.C. Code § 28:311(b), a financing statement may perfect a security interest in a consumer-purchased vehicle prior to issuance of the certificate of title.  That issue is not before the Court in this appeal, however, because BMW Bank did not file a financing statement.

Displacement of the common law by the Uniform Commercial Code and the DMV

Statute. The premise of the Bankruptcy Court's decision is that the common law rule prevails

unless displaced by statute. However, a statute intended to be the exclusive body of applicable

law does displace the common law. The Bankruptcy Court characterizes its holding as

applicable only to "that rare circumstance" where the Uniform Commercial Code imposes no

applicable requirements, but in fact the circumstance in question occurs every time a car is sold

to a District of Columbia resident. The frequency of the occurrence is another reason to

conclude that the elaborate statutory scheme erected by the Uniform Commercial Code and the

DMV Statute preempts the common law when it comes to the perfection of consensual security

interests, the very subject matter of Article 9.

The Bankruptcy Court's common law lien approach upholds secret liens that no one in

the world could know about,[4] another indicator that the Bankruptcy Court reached the wrong

conclusion. Article 9 of the Uniform Commercial Code was intended to displace the common

law for property covered by it in order to prevent "'secret liens,' which are abhorrent to a

significant purpose of Article 9 perfection requirements—to provide notice of a security interest

to the world." In re Hurst, 308 B.R. 298, 303 (Bankr. S.D.Oh. 2004). "The rules for

subordination of unperfected security interests have a purpose—in common with similar rules in

all filing and recording systems—to impose sanctions for not adhering to filing or recording

requirements. Such rules are necessary to make the system effective and enforce the policy

against secret liens." U.C.C. Text Permanent Editorial Board Commentary No. 6 (attached as

Exhibit B).

---

[4] Under the Bankruptcy Court's view, a security interest is
perfected once the buyer takes possession of the car whether or
not an application for certificate of title noting the security
interest is ever submitted to the Department of Motor Vehicles.

The Bankruptcy Court found support for its common law lien approach in Section 1-103 of the Uniform Commercial Code, which provides that principles of law and equity may be used to supplement the provisions of the Uniform Commercial Code. Opinion 2 at 18. But "supplement" does not mean "displace," particularly when a major purpose of Article 9—avoidance of secret liens—is thwarted by applying the common law:

> [W]hile principles of common law and equity may supplement provisions of the Uniform Commercial Code, they may not be used to supplant its provisions, or the purposes and policies those provisions reflect, unless a specific provision of the Uniform Commercial Code provides otherwise. **In the absence of such a provision, the Uniform Commercial Code preempts principles of common law and equity that are inconsistent with either its provisions or its purposes and policies.** Official Comment, UCC § 1-103 (attached as Exhibit C) (emphasis added).

Just as there is nowhere in Article 9 a provision for the common law perfection of a security interest in a consumer-purchased car, there is nowhere in Article 9 a provision for the common law perfection of a security interest in investment property. Yet when it comes to investment property "[c]ommon law 'first in time, first in right' principles . . . are necessarily displaced by the priority rules set out in [Section 9-328] . . . ." Comment No. 8, D.C. Code § 28:9-328. There is no reason why common law principles are not also displaced by the priority rules set out in Section 9-317. Under those rules the Trustee as a judgment lien creditor (under D.C. Code § 28:9-102(52) and 11 U.S.C. §§ 547(e)(1)(B)) would have priority over an unperfected security interest in a car. As Comment No. 8 to D.C. Code § 28:9-328 also points out, care must be taken to ensure that the escape valve provided in Section 1-103 "does not impair the certainty and predictability of the priority rules." In the Trustee's view, the Bankruptcy Court allowed the perceived escape valve of the common law to undermine the certainty and predictability of the priority rules in Section 9-317.

9

Like the Uniform Commercial Code, motor vehicle statutes are intended to give public notice of security interests in cars.  See North v. Desert Hills Bank (In re North), 310 B.R. 152, 159 (Bankr. D.Az. 2004).  Just as the Bankruptcy Court's decision defeats this goal of the Uniform Commercial Code, its decision defeats this goal of the DMV Statute.

The common law rule on which the Bankruptcy Court relies was undoubtedly the rule in many, if not all, other jurisdictions prior to passage of the Uniform Commercial Code and integration of the Uniform Commercial Code with the motor vehicle statutes of those jurisdictions.[5]  Yet, to the Trustee's knowledge, there are no cases from other jurisdictions in which courts have applied the common law as a method of perfecting a security interest in a consumer-purchased car.  It would be remarkable if, out of all of the jurisdictions in the country, the District of Columbia were the only jurisdiction in which, despite passage of the Uniform Commercial Code and a motor vehicle statute covering the perfection of security interests, the common law controlled the perfection of a security interest from the moment of purchase until the issuance of a certificate of title.

In a passage quoted by the Bankruptcy Court, the court in In re Farnham, 57 B.R. 241 (Bankr. D.Vt. 1986), stated:

> One writer has surveyed the three prevailing schemes for using Certificates of Title statutes to perfect security interest in vehicles, the "indication," delivery," and "dual schemes:
>
> Presently, twenty-two states and the District of Columbia have enacted certificate of title systems that make the perfection event either the indication of the lien on the certificate of title or the issuance of the certificate of title after indication.  Twenty-four states have certificate of title laws that make mere delivery of the appropriate papers and fees to the proper officer the act of perfection, even if the certificate of title is never noted

---

[5] The priority rules in Article 9 generally follow the common law rule of first-in-time is first-in-right, all things being equal, but a later perfected security interest beats a prior unperfected security interest.  Sections 9-317 and 9-322.

10

or issued. . . .  Finally, three states have "dual system" certificate of title perfection laws that require both the filing of a financing statement and the use of the certificate of title.

57 B.R. at 245 (quoting Note, <u>Secured Transactions:  Certificate of Title—Delivery or Notation? The Lender's Dilemma,</u> 37 Okla.L.Rev. 618, 622 (1984) (footnotes omitted).

The very title of the Oklahoma Law Review article cited by the court in <u>Farnham</u> is telling.  Whether a security interest in a car is perfected upon delivery of a completed title application or upon issuance of a certificate of title noting the security interest is where the debate always lies.  There is never a debate about whether the common law is a source of applicable law.  <u>E.g.</u>, <u>Union Bank & Trust Co. v. Baker (In re Tressler)</u>, 771 F.2d 791 (3rd Cir. 1985); <u>Hanrahan v. Arcadia Financial Ltd. (In re Scott)</u>, 245 B.R. 331 (Bankr. N.D.Ia. 2000); <u>see Tidwell v. First Community Bank of Georgia (In re Charley's Automotive, Inc.)</u>, 2003 WL 21058331 (Bankr. M.D.Ga. 2003).  On page 18 of Opinion 2 the Bankruptcy Court cites four additional cases where the debate about perfection was over notation or delivery, not the common law.

Under the Bankruptcy Court's view, however, the District of Columbia falls into none of the three schemes referred to in the Oklahoma Law Review article cited by the court in <u>Farnham</u> because the District of Columbia allows the common law to provide the applicable body of law for perfection of a security interest before a certificate of title is issued.  Again, it would be remarkable if this really were the case.  "Remarkable" may not be an appropriate test for statutory construction.  However, when the statutes do not say the common law applies, when the statutes says they are the exclusive means of perfection, and when the result of applying the common law leads to a result unique among all of the common law jurisdictions in the United States, one must wonder if the proper statutory construction has been employed.

11

Even the District of Columbia Court of Appeals case on which the Bankruptcy Court relies most heavily for its "first-in-time is first-in-right" common law default approach, District of Columbia v. Franklin Investment Co., Inc., 404 A.2d 536 (D.C. 1979), ties the perfection of a security interest in a car to notation on the certificate of title. 404 A.2d at 540. Admittedly, this reference is to perfection under Maryland law. However, it illustrates the Trustee's point that under the Bankruptcy Court's view the interaction of the Uniform Commercial Code and the DMV Statute is unique, which further suggests the incorrectness of the Bankruptcy Court's view.

C.  Comment No. 5 To Section 9-311 Makes Clear There Is An Unperfected Gap Period Under the District's Unamended DMV Statute.

That the Trustee is correct in the above analysis is made clear by Uniform Commercial Code Comment No. 5 to Section 9-311, which follows D.C. Code § 28:9-311. Comment No. 5 describes the exact situation now before the Court:

> [S]tatutes under which perfection does not occur until a certificate of title is issued will create a gap between the time that the goods are covered by the certificate under Section 9-303 and the time of perfection. If the gap is long enough, it may result in turning some unobjectionable transactions into avoidable preferences under Bankruptcy Code Section 547. (The preference risk arises if more than 10 days (or 20 days, in the case of a purchase-money security interest) passes between the time a security interest attaches (or the debtor receives possession of the collateral, in the case of a purchase-money security interest) and the time it is perfected.

The Comment goes on to recommend a legislative amendment to such motor vehicle statutes providing for perfection to occur upon receipt of the application for a certificate of title. Eldon H. Riley, 1 Security Interests in Personal Property § 15:22 (Westlaw 2002) (attached as Exhibit D). But here the applicable motor vehicle statute has not been amended, and the Bankruptcy Court in Opinion 1 disavowed the notion that it should disregard a plainly written statute in order to protect a secured party during the gap period between application (when the

car is covered by a certificate of title under Section 9-303) and title issuance. Opinion 1 at 21-22.

In Opinion 2 the Bankruptcy Court dismissed the Trustee's reliance on Comment No. 5 to Section 9-311 of the Uniform Commercial Code as inapplicable to the District of Columbia DMV Statute under which (thanks to the common law) "perfection *does* occur prior to the issuance of a certificate of title." Opinion 2 at 20. The Bankruptcy Court's dismissal of Comment No. 5 underscores the uniqueness—and likely incorrectness—of its holding. Here is a UCC Official Comment that, like the case law cited on page 11 above as well as on page 18 of Opinion 2, couches the perfection debate only in terms of delivery of the application or issuance of the certificate of title noting the security interest. This, however, is a perfection debate not held in the District of Columbia if the common law controls until issuance of the certificate of title.

In fact, the Uniform Commercial Code does not even contemplate that, absent an express relation-back provision in a motor vehicle statute, a security interest could be perfected in a car prior to the completion of statutorily-provided perfection steps. Comment No. 6 to Section 9-303 notes the section's assumption that "the certificate-of-title statutes to which [Sections 9-303, 9-311, and 9-316(d)&(e)] apply do not have relation-back provisions." But at least the Comment acknowledges the existence of statutory relation-back provisions. Common law perfection effective upon purchase of a car is the ultimate relation-back, but it obviously is not a statutory provision of the kind referred to in the Comment.

D.  The Bankruptcy Court Misconstrued The DMV Statute's Exclusion For The Creation And Perfection Of Judicial Liens As An Exclusion For The Priority Of Judicial Liens.

The Bankruptcy Court's decision was based in part on its perception that D.C. Code

13

§§ 50-1201 *et seq.* are silent on the relative priority of judicial liens and security interests because the statute excludes judicial liens from the definition of liens covered by the statute. This perception is incorrect.  By excluding judicial liens from the definition of liens covered by the statute, the statute simply makes clear that it governs the establishment and **perfection** of consensual security interests, not the establishment and perfection of judicial liens.  But this does not mean that the common law affords the **priority** rule as between a judicial lien and a consensual security interest in a car.  By stating that no lien (*i.e.,* consensual security interest) shall be valid (*i.e.*, perfected) except as against the parties and other persons with notice until entered on an outstanding certificate during the time a certificate is outstanding, the statute necessarily means that during the time a certificate is outstanding a perfected security interest is valid against all persons with later-arising interests, including the holder of the equivalent of a judicial lien such as the Trustee (under D.C. Code § 28:9-102(52) and 11 U.S.C. § 547(e)(1)(B)). In other words, the statute is as explicitly applicable to judicial liens as it is to other liens.

Uniform Commercial Code as sole source of priority rules for security interests in cars, and inconsistency between common law rule and Uniform Commercial Code distinctions between perfection and priority.  In any event, the Uniform Commercial Code, in Section 9-311, refers to the DMV Statute only for perfection requirements.  The Uniform Commercial Code itself establishes the rules of priority for perfected security interests.  Under the applicable priority rule in D.C. Code § 28:9-317(a)(2)(A),[6] a security interest is subordinate to the rights of a person that becomes a lien holder before the security interest is perfected.  It follows that a

---

[6] The heading of the Uniform Commercial Code subpart that the section begins is "Priority."

14

perfected security interest trumps a later-arising judicial lien. **There is no exception in Section 9-317 for security interests in cars.**

The bright line distinction between perfection (D.C. Code § 50-1202) and priority (D.C. Code § 28:9-317) further demonstrates that the common law rule of "first-in-time is first-in-right," which draws no such distinctions, has no place here. By using the DMV Statute only as a perfection statute, the Uniform Commercial Code, in Section 9-311 and 9-317, preserves the distinction between perfection and priority and makes clear that priority frequently depends on perfection. Section 9-311, the DMV Statute, and Section 9-317 work together in a coherent and consistent fashion. One simply looks to the DMV Statute for how to perfect and to the UCC for the priority of security interests that have been perfected under the DMV Statute. In the common law rule of "first-in-time is first-in-right," however, there is no distinction between perfection and priority. One simply looks to the common law, and no further, to determine which interest or lien prevails. If the common law is the applicable rule for a security interest in a consumer-purchased car until a certificate of title is issued, Section 9-311's reference to compliance with the DMV Statute as the exclusive means of **perfection**, and Section 9-317's list of **priority** rules, are superfluous and their terminology is inapt in the same context. It is impossible to reconcile the Bankruptcy Court's common law approach with the logic and language of Sections 9-311 and 9-317 and their clear-cut distinctions between priority and perfection. Yet it is an elementary rule of statutory construction that statutes should be construed to fit together as a whole if at all possible. The Bankruptcy Court's decision violates this rule.

In Opinion 1, the Bankruptcy Court asked, "Where is the provision addressing priority of a security interest noted on a certificate of title *vis a vis* a subsequent judicial lien?" and answered the question in the negative. Opinion 1 at 16. By answering in the negative, the

15

Bankruptcy Court supported its conclusion that the common law priority rule controlled.  The Bankruptcy Court reasoned that if the statute does not change the common law priority rule when a certificate is outstanding surely it does not change the common law priority law before a certificate is issued.  But, as seen above, both the Bankruptcy Court's question and its answer were wrong.  The question was wrong because it was asking for a priority provision in the DMV Statute, not the Uniform Commercial Code.  The answer was wrong for two reasons.  First, D.C. Code § 50-1202, the applicable **perfection** statute, means that once a certificate is issued a security interest in the collateral is valid (*i.e.*, perfected) against all other interests, which obviously includes the holder of a judicial lien.  Second, Section 9-317(a)(2)(A), the applicable **priority** statute, means that a perfected security interest in a consumer-purchased car has priority over a later judicial lien.

Following the Bankruptcy Court's logic but using the correct premise leads to the opposite of the result reached by the Bankruptcy Court.  If the DMV Statute covers judicial liens without reliance on the common law once a certificate is issued, there is no reason to conclude that the common law has any bearing before the certificate is issued.  Again, the exclusion of judicial liens from the definition of liens in D.C. Code § 50-1201 means simply that how to establish and perfect judicial liens is not covered by D.C. Code §§ 50-1201 *et. seq.*  It does **not** mean that subsequent judicial liens are not expressly junior to perfected security interests.  Perfected security interests in consumer-purchased cars are valid against subsequent interests including judicial liens, under both the DMV Statute in D.C. Code § 50-1202 and the Uniform Commercial Code in Section 9-317(a)(2)(A).

Lack of any time limit for application under the Bankruptcy Court's approach.  The Trustee readily acknowledges the oddness of a statutory scheme in which the application for title

16

could be submitted immediately without the lender receiving preference protection. But that of course is not up to the Court to redress. In any event, the Bankruptcy Court's conclusion that the common law steps in until the certificate is issued results in an even greater oddness. Under the Court's common law perfection approach, there is no apparent time limit in which a secured party must apply for a certificate of title, let alone have it issued, in order to receive preference protection. Whether the application is submitted within 20 days, 20 months, or 20 years would not seem to matter if the secured party is protected by the common law first-in-time is first-in-right approach until the certificate of title is issued. The Bankruptcy Court dismissed the Trustee's time limit argument as mere policy grounds, but the Trustee's real point is that a statutory construction leading to such a strange result is likely to be an incorrect statutory construction.

The Bankruptcy Court's divergence from the District Court's Waiters decision. The Bankruptcy Court in both of its Opinions reached a different conclusion than the United States District Court in Albert v. Nissan Motor Acceptance Corporation (In re Waiters), Civil No. 02-1588 (RWR) (D.D.C. July 12, 2004) (attached as Exhibit E). Because this is a multiple-judge district, the District Court's opinion is not binding on the Bankruptcy Court. In fact, the Trustee tends to agree more with the Bankruptcy Court's view that a certificate is not outstanding until issued than with the District Court's apparent view that a certificate can be outstanding before issued. But, in its ultimate conclusion, for the reasons stated above, the Trustee strongly believes that the District Court's decision, unlike the Bankruptcy Court's decision, is in accord with the explicit provisions of the Uniform Commercial Code (Sections 9-308(a) and 9-311), an explicit Official Comment to the Uniform Commercial Code (Comment No. 5 to Section 9-311), the clear import of the District's DMV Statute (§ 50-1202), the goal of both the Uniform

17

Commercial Code and the DMV Statute to avoid secret liens, and the priority rules of the

Uniform Commercial Code (Section 9-317).

CONCLUSION

For the reasons stated, the Court should reverse the decision of the Bankruptcy Court.

Respectfully submitted,


/s/ Kevin R. McCarthy
Kevin R. McCarthy, No. 218149
McCarthy & White, PLLC
8180 Greensboro Drive - Suite 875
McLean, VA 22102
(703) 770-9261
Attorneys for Trustee

CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of August, 2005 I mailed a copy of the foregoing to
the following:

U.S. Trustee
115 S. Union St., Suite 210
Alexandria, VA 22314

Ronald G. DeWald, Esq.
Lipshultz & Hone, Chartered
8630 Fenton Street
Suite 108 - Montgomery Center
Silver Spring, MD 20910


/s/ Kevin R. McCarthy
Kevin R. McCarthy