Addendum

Addendum Containing Statutes Cited

ment. The term does not include (i) investment property, (ii) letters of credit, or (iii) writings that evidence a right to payment arising out of the use of a credit or charge card or information contained on or for use with the card.

(48) "Inventory" means goods, other than farm products, which:

(A) Are leased by a person as lessor;

(B) Are held by a person for sale or lease or to be furnished under a contract of service;

(C) Are furnished by a person under a contract of service; or

(D) Consist of raw materials, work in process, or materials used or consumed in a business.

(49) "Investment property" means a security, whether certificated or uncertificated, security entitlement, securities account, commodity contract, or commodity account.

(50) "Jurisdiction of organization", with respect to a registered organization means the jurisdiction under whose law the organization is organized.

(51) "Letter-of-credit right" means a right to payment or performance under a letter of credit, whether or not the beneficiary has demanded or is at the time entitled to demand payment or performance. The term does not include the right of a beneficiary to demand payment or performance under a letter of credit.

(52) "Lien creditor" means:

(A) A creditor that has acquired a lien on the property involved by attachment, levy, or the like;

(B) An assignee for benefit of creditors from the time of assignment;

(C) A trustee in bankruptcy from the date of the filing of the petition; or

(D) A receiver in equity from the time of appointment.

(53) "Manufactured home" means a structure, transportable in one or more sections, which, in the traveling mode, is 8 body feet or more in width or 40 body feet or more in length, or, when erected on site, is 320 or more square feet, and which is built on a permanent chassis and designed to be used as a dwelling with or without a permanent foundation when connected to the required utilities, and includes the plumbing, heating, air-conditioning, and electrical systems contained therein. The term includes any structure that meets all of the requirements of this paragraph except the size requirements and with respect to which the manufacturer voluntarily files a certification required by the United States Secretary of Housing and Urban Development and complies with the standards established under Title 42 of the United States Code.

(54) "Manufactured-home transaction" means a secured transaction:

(A) That creates a purchase-money security interest in a manufactured home, other than a manufactured home held as inventory; or

(B) In which a manufactured home, other than a manufactured home held as inventory, is the primary collateral.

Text effective July 1, 2001

458

§ 28:9–307                              UNIFORM COMMERCIAL CODE

as set forth in Section 9–311(b), but some
nations are not parties to that Convention.

### Historical and Statutory Notes

**Legislative History of Laws**
   For Law 13–201, see notes following
§ 28:9–101.

## Subpart 2.  Perfection.

## § 28:9–308.  When security interest or agricultural lien is perfected; continuity of perfection.

(a) Except as otherwise provided in this section and § 28:9–309, a security
interest is perfected if it has attached and all of the applicable requirements for
perfection in §§ 28:9–310 through 28:9–316 have been satisfied. A security
interest is perfected when it attaches if the applicable requirements are satisfied
before the security interest attaches.

(b) An agricultural lien is perfected if it has become effective and all of the
applicable requirements for perfection in § 28:9–310 have been satisfied. An
agricultural lien is perfected when it becomes effective if the applicable require-
ments are satisfied before the agricultural lien becomes effective.

(c) A security interest or agricultural lien is perfected continuously if it is
originally perfected by one method under this article and is later perfected by
another method under this article, without an intermediate period when it was
unperfected.

(d) Perfection of a security interest in collateral also perfects a security
interest in a supporting obligation for the collateral.

(e) Perfection of a security interest in a right to payment or performance also
perfects a security interest in a security interest, mortgage, or other lien on
personal or real property securing the right.

(f) Perfection of a security interest in a securities account also perfects a
security interest in the security entitlements carried in the securities account.

(g) Perfection of a security interest in a commodity account also perfects a
security interest in the commodity contracts carried in the commodity account.

(Oct. 26, 2000, D.C. Law 13–201, § 101, 47 DCR 7576.)

### Uniform Commercial Code Comment

1. **Source.**  Former Sections 9–303,
9–115(2).

2. **General Rule.**  This Article uses the
term "attach" to describe the point at
which property becomes subject to a secu-
rity interest.  The requisites for attach-

ment are stated in Section 9–203.  When it
attaches, a security interest may be either
perfected or unperfected.  "Perfected"
means that the security interest has at-
tached and the secured party has taken all
the steps required by this Article as speci-

**Text effective July 1, 2001**

536

fied in Sections 9–310 through 9–316. A perfected security interest may still be or become subordinate to other interests. See, e.g., Sections 9–320, 9–322. However, in general, after perfection the secured party is protected against creditors and transferees of the debtor and, in particular, against any representative of creditors in insolvency proceedings instituted by or against the debtor. See, e.g., Section 9–317.

Subsection (a) explains that the time of perfection is when the security interest has attached and any necessary steps for perfection, such as taking possession or filing, have been taken. The "except" clause refers to the perfection-upon-attachment rules appearing in Section 9–309. It also reflects that other subsections of this section, e.g., subsection (d), contain automatic-perfection rules. If the steps for perfection have been taken in advance, as when the secured party files a financing statement before giving value or before the debtor acquires rights in the collateral, then the security interest is perfected when it attaches.

3. **Agricultural Liens.** Subsection (b) is new. It describes the elements of perfection of an agricultural lien.

4. **Continuous Perfection.** The following example illustrates the operation of subsection (c):

**Example 1:** Debtor, an importer, creates a security interest in goods that it imports and the documents of title that cover the goods. The secured party, Bank, takes possession of a negotiable bill of lading covering certain imported goods and hereby perfects its security interest in the bill of lading and the goods. See Sections 9–313(a), 9–312(c)(1). Bank releases the bill of lading to the debtor for the purpose of procuring the goods from the carrier and selling them. Under Section 9–312(f), Bank continues to have a perfected security interest in the document and goods for 20 days. Bank files a financing statement covering the collateral before the expiration of the 20–day period. Its security

interest now continues perfected for as long as the filing is good.

If the successive stages of Bank's security interest succeed each other without an intervening gap, the security interest is "perfected continuously," and the date of perfection is when the security interest first became perfected (i.e., when Bank received possession of the bill of lading). If, however, there is a gap between stages–for example, if Bank does not file until after the expiration of the 20–day period specified in Section 9–312(f) and leaves the collateral in the debtor's possession–then, the chain being broken, the perfection is no longer continuous. The date of perfection would now be the date of filing (after expiration of the 20–day period). Bank's security interest would be vulnerable to any interests arising during the gap period which under Section 9–317 take priority over an unperfected security interest.

5. **Supporting Obligations.** Subsection (d) is new. It provides for automatic perfection of a security interest in a supporting obligation for collateral if the security interest in the collateral is perfected. This is unlikely to effect any change in the law prior to adoption of this Article.

**Example 2:** Buyer is obligated to pay Debtor for goods sold. Buyer's president guarantees the obligation. Debtor creates a security interest in the right to payment (account) in favor of Lender. Under Section 9–203(f), the security interest attaches to Debtor's rights under the guarantee (supporting obligation). Under subsection (d), perfection of the security interest in the account constitutes perfection of the security interest in Debtor's rights under the guarantee.

6. **Rights to Payment Secured by Lien.** Subsection (e) is new. It deals with the situation in which a security interest is created in a right to payment that is secured by a security interest, mortgage, or other lien.

**Example 3:** Owner gives to Mortgagee a mortgage on Blackacre to secure a loan.

For text effective until July 1, 2001, see Appendix to Article 9, post.

§ 28:9–308

Owner's obligation to pay is evidenced by a promissory note. In need of working capital, Mortgagee borrows from Financer and creates a security interest in the note in favor of Financer. Section 9–203(g) adopts the traditional view that the mortgage follows the note; i.e., the transferee of the note acquires the mortgage, as well. This subsection adopts a similar principle: perfection of a security interest in the right to payment constitutes perfection of a security interest in the mortgage securing it.

An important consequence of the rules in Section 9–203(g) and subsection (e) is that, by acquiring a perfected security interest in a mortgage (or other secured) note, the secured party acquires a security interest in the mortgage (or other lien) that is senior to the rights of a person who becomes a lien creditor of the mortgagee (Article 9 debtor). See Section 9–317(a)(2). This result helps prevent the

separation of the mortgage (or other lien) from the note.

Under this Article, attachment and perfection of a security interest in a secured right to payment do not of themselves affect the obligation to pay. For example, if the obligation is evidenced by a negotiable note, then Article 3 dictates the person whom the maker must pay to discharge the note and any lien securing it. See Section 3–602. If the right to payment is a payment intangible, then Section 9–406 determines whom the account debtor must pay.

Similarly, this Article does not determine who has the power to release a mortgage of record. That issue is determined by real-property law.

7. **Investment Property.** Subsections (f) and (g) follow former Section 9–115(2).

### Historical and Statutory Notes

**Legislative History of Laws**

For Law 13–201, see notes following § 28:9–101.

### Notes of Decisions

Priority of security interests 1

**1. Priority of security interests**

Assignment of account that falls within scope of Uniform Commercial Code provisions governing assignments, which is not perfected, leaves property interest in assignor against which third-party lien creditor can attach. D.C.Code 1981, §§ 28:9–203(1), 28:9–301(1)(b), 28:9–302(1), 28:9–303(1), 28:9–304(1), 28:9–305; U.C.C. §§ 9–302, 9–302 comment. District of Columbia v. Thomas Funding Corp.,

1991, 593 A.2d 1030. Secured Transactions ⬡ 183

Generally, party who first notifies public of his security interest in property, either through possession of collateral or filing of his financing treatment, prevails over all other parties with security interest in same collateral, regardless of which party first acquired security interest itself. D.C.Code 1973, §§ 28:9–204(1), 28:9–301(1), 28:9–302, 28:9–303, 28:9–305, 28:9–312(5). Malakoff v. Washington, 1981, 434 A.2d 432. Secured Transactions ⬡ 145.1

## § 28:9–309. Security interest perfected upon attachment.

The following security interests are perfected when they attach:

(1) A purchase-money security interest in consumer goods, except as otherwise provided in § 28:9–311(b) with respect to consumer goods that are subject to a statute or treaty described in § 28:9–311(a);

(2) An assignment of accounts or payment intangibles which does not by itself or in conjunction with other assignments to the same assignee transfer a significant part of the assignor's outstanding accounts or payment intangibles;

Text effective July 1, 2001

a participant that is a net debtor were to default on its payment obligation, the clearing corporation would not receive some of the funds needed to settle with participants that are net creditors to the system. To complete end-of-day settlement after a payment default by a participant, a clearing corporation that settles on a net, same-day basis may need to draw on credit lines and pledge securities of the defaulting participant or other securities pledged by participants in the clearing corporation to secure such drawings. The clearing corporation may be the top-tier securities intermediary for the securities pledged, so that it would not be practical for the lender to obtain control. Even where the clearing corporation holds some types of securities through other intermediaries, however, the clearing corporation is unlikely to be able to complete the arrangements necessary to convey "control" over the securities to be pledged in time to complete settlement in a timely manner.

However, the term "securities intermediary" is defined in Section 8–102(a)(14) to include clearing corporations. Thus, the perfection rule of paragraph (10) applies to security interests in investment property granted by clearing corporations.

7. **Beneficial Interests in Trusts.** Under former Section 9–302(1)(c), filing was not required to perfect a security interest created by an assignment of a beneficial interest in a trust. Because beneficial interests in trusts are now used as collateral with greater frequency in commercial transactions, under this Article filing is required to perfect a security interest in a beneficial interest.

8. **Assignments for Benefit of Creditors.** No filing or other action is required to perfect an assignment for the benefit of creditors. These assignments are not financing transactions, and the debtor ordinarily will not be engaging in further credit transactions.

### Historical and Statutory Notes

**Legislative History of Laws**

For Law 13–201, see notes following § 28:9–101.

### Notes of Decisions

**Perfection of security interest, generally 1**

**1. Perfection of security interest, generally**

Proprietary lease document for cooperative apartment was not "security" for purposes of Uniform Commercial Code sections providing that perfection by possession is possibility with respect to "instruments," and incorporating definition of security into definition of "instrument"; thus, creditor could not perfect security interest in borrower's right to apartment by creditor's possession of that document. D.C.Code 1981, §§ 28:8–102(1)(a),

28:9–105(1)(i), 28:9–305. First Sav. Bank of Virginia v. Barclays Bank, S.A., 1992, 618 A.2d 134. Secured Transactions ⟐ 89

Assignment of account that falls within scope of Uniform Commercial Code provisions governing assignments, which is not perfected, leaves property interest in assignor against which third-party lien creditor can attach. D.C.Code 1981, §§ 28:9–203(1), 28:9–301(1)(b), 28:9–302(1), 28:9–303(1), 28:9–304(1), 28:9–305; U.C.C. §§ 9–302, 9–302 comment. District of Columbia v. Thomas Funding Corp., 1991, 593 A.2d 1030. Secured Transactions ⟐ 183

## § 28:9–310. When filing required to perfect security interest or agricultural lien; security interests and agricultural liens to which filing provisions do not apply.

Except as otherwise provided in subsection (b) and § 28:9–312(b), a financing statement must be filed to perfect all security interests and agricultural liens.

For text effective until July 1, 2001, see Appendix to Article 9, post.

§ 28:9–310                                        UNIFORM COMMERCIAL CODE

(b) The filing of a financing statement is not necessary to perfect a security interest:

(1) That is perfected under § 28:9–308(d), (e), (f), or (g);

(2) That is perfected under § 28:9–309 when it attaches;

(3) In property subject to a statute, regulation, or treaty described in § 28:9–311(a);

(4) In goods in possession of a bailee which is perfected under § 28:9–312(d)(1) or (2);

(5) In certificated securities, documents, goods, or instruments which is perfected without filing or possession under § 28:9–312(e), (f), or (g);

(6) In collateral in the secured party's possession under § 28:9–313;

(7) In a certificated security which is perfected by delivery of the security certificate to the secured party under § 28:9–313;

(8) In deposit accounts, electronic chattel paper, investment property, or letter-of-credit rights which is perfected by control under § 28:9–314;

(9) In proceeds which is perfected under § 28:9–315; or

(10) That is perfected under § 28:9–316.

(c) If a secured party assigns a perfected security interest or agricultural lien, a filing under this article is not required to continue the perfected status of the security interest against creditors of and transferees from the original debtor.

(Oct. 26, 2000, D.C. Law 13–201, § 101, 47 DCR 7576.)

### Uniform Commercial Code Comment

1. **Source.** Former Section 9–302(1), (2).

2. **General Rule.** Subsection (a) establishes a central Article 9 principle: Filing a financing statement is necessary for perfection of security interests and agricultural liens. However, filing is not necessary to perfect a security interest that is perfected by another permissible method, see subsection (b), nor does filing ordinarily perfect a security interest in a deposit account, letter-of-credit right, or money. See Section 9–312(b). Part 5 of the Article deals with the office in which to file, mechanics of filing, and operations of the filing office.

3. **Exemptions from Filing.** Subsection (b) lists the security interests for which filing is not required as a condition of perfection, because they are perfected automatically upon attachment (subsections (b)(2) and (b)(9)) or upon the occurrence of another event (subsections (b)(1), (b)(5),

and (b)(9)), because they are perfected under the law of another jurisdiction (subsection (b)(10)), or because they are perfected by another method, such as by the secured party's taking possession or control (subsections (b)(3), (b)(4), (b)(5), (b)(6), (b)(7), and (b)(8)).

4. **Assignments of Perfected Security Interests.** Subsection (c) concerns assignment of a perfected security interest or agricultural lien. It provides that no filing is necessary in connection with an assignment by a secured party to an assignee in order to maintain perfection as against creditors of and transferees from the original debtor.

**Example 1:** Buyer buys goods from Seller, who retains a security interest in them. After Seller perfects the security interest by filing, Seller assigns the perfected security interest to X. The security interest, in X's hands and without further steps on X's

Text effective **July 1, 2001**

542

exempted premium finance agreements from filing requirements. D.C.C.E. §§ 28:9-104(g), 28:9-302, 35-1372. In re Auto-Train Corp., 1981, 9 B.R. 159. Secured Transactions ⇐ 82.1

2. Sufficiency of filing

Assignee of taxpayer's right to receive contractual payments did not qualify as holder of security interest with priority over Internal Revenue Service (IRS) lien, where financing statement filed by assignee misspelled taxpayer's name, making it so seriously misleading to be ineffective in perfecting its security interest. D.C.Code 1981, §§ 28:9-301(1)(b), 28:9-302, 28:9-302(1); U.C.C. §§ 9-302, 9-302 comment; 26 U.S.C.A. § 6323(h)(1, 6). District of Columbia v. Thomas Funding Corp., 1991, 593 A.2d 1030. Internal Revenue ⇐ 4786

3. Place of filing

Where Canadian corporation with no offices in the United States appointed plaintiff as sales representative for corporation's office furniture, plaintiff arranged sales to District of Columbia buyer, the furniture was delivered, and the corporation assigned the accounts receivable to Canadian factor with notice to buyer to pay to the factor, factor filed in Canada the assignment which identified the corporation as debtor and the factor as secured party, factor perfected his security interest in the buyer's outstanding obligation to the corporation within the meaning of District of Columbia Code, and such interest was superior to plaintiff's lien by attachment for unpaid commissions. D.C.C.E. § 28:9-103(5). Heller v. Buchbinder, 1979, 399 A.2d 850. Secured Transactions ⇐ 182, 183

4. First to file

Generally, party who first notifies public of his security interest in property, either through possession of collateral or filing of his financing treatment, prevails over all other parties with security interest in same collateral, regardless of which party first acquired security interest itself. D.C.Code 1973, §§ 28:9-204(1), 28:9-301(1), 28:9-302, 28:9-303, 28:9-305, 28:9-312(5). Malakoff v. Washington, 1981, 434 A.2d 432. Secured Transactions ⇐ 145.1

## § 28:9-311. Perfection of security interests in property subject to certain statutes, regulations, and treaties.

(a) Except as otherwise provided in subsection (d), the filing of a financing statement is not necessary or effective to perfect a security interest in property subject to:

(1) A statute, regulation, or treaty of the United States whose requirements for a security interest's obtaining priority over the rights of a lien creditor with respect to the property preempt § 28:9-310(a);

(2) The provisions of section 50-1201 et seq.; or

(3) A certificate-of-title statute of another jurisdiction which provides for a security interest to be indicated on the certificate as a condition or result of the security interest's obtaining priority over the rights of a lien creditor with respect to the property.

(b) Compliance with the requirements of a statute, regulation, or treaty described in subsection (a) for obtaining priority over the rights of a lien creditor is equivalent to the filing of a financing statement under this article. Except as otherwise provided in subsection (d) and §§ 28:9-313 and 28:9-316(d) and (e) for goods covered by a certificate of title, a security interest in property subject to a statute, regulation, or treaty described in subsection (a) may be perfected only by compliance with those requirements, and a security interest so perfected remains perfected notwithstanding a change in the use or transfer of possession of the collateral.

(c) Except as otherwise provided in subsection (d) and § 28:9-316(d) and (e), duration and renewal of perfection of a security interest perfected by compliance with the requirements prescribed by a statute, regulation, or treaty

Text effective July 1, 2001

## SECURED TRANSACTIONS

### § 28:9–311

described in subsection (a) are governed by the statute, regulation, or treaty. In other respects, the security interest is subject to this article.

(d) During any period in which collateral subject to a statute specified in subsection (a)(2) is inventory held for sale or lease by a person or leased by that person as lessor and that person is in the business of selling goods of that kind, this section does not apply to a security interest in that collateral created by that person.

(Oct. 26, 2000, D.C. Law 13–201, § 101, 47 DCR 7576.)

### Uniform Commercial Code Comment

1. **Source.** Former Section 9–302(3), (4).

2. **Federal Statutes, Regulations, and Treaties.** Subsection (a)(1) exempts from the filing provisions of this Article transactions as to which a system of filing–state or federal–has been established under federal law. Subsection (b) makes clear that when such a system exists, perfection of a relevant security interest can be achieved only through compliance with that system (i.e., filing under this Article is not a permissible alternative).

An example of the type of federal statute referred to in subsection (a)(1) is 49 U.S.C. §§ 44107–11, for civil aircraft of the United States. The Assignment of Claims Act of 1940, as amended, provides for notice to contracting and disbursing officers and to sureties on bonds but does not establish a national filing system and therefore is not within the scope of subsection (a)(1). An assignee of a claim against the United States may benefit from compliance with the Assignment of Claims Act. But regardless of whether the assignee complies with that Act, the assignee must file under this Article in order to perfect its security interest against creditors and transferees of its assignor.

Subsection (a)(1) provides explicitly that the filing requirement of this Article defers only to federal statutes, regulations, or treaties whose requirements for a security interest's obtaining priority over the rights of a lien creditor preempt Section 9–310(a). The provision eschews reference to the term "perfection," inasmuch

as Section 9–308 specifies the meaning of that term and a preemptive rule may use other terminology.

3. **State Statutes.** Subsections (a)(2) and (3) exempt from the filing requirements of this Article transactions covered by State certificate-of-title statutes covering motor vehicles and the like. The description of certificate-of-title statutes in subsections (a)(2) and (a)(3) tracks the language of the definition of "certificate of title" in Section 9–102. For a discussion of the operation of state certificate-of-title statutes in interstate contexts, see the Comments to Section 9–303.

Some states have enacted central filing statutes with respect to secured transactions in kinds of property that are of special importance in the local economy. Subsection (a)(2) defers to these statutes with respect to filing for that property.

4. **Inventory Covered by Certificate of Title.** Under subsection (d), perfection of a security interest in the inventory of a person in the business of selling goods of that kind is governed by the normal perfection rules, even if the inventory is subject to a certificate-of-title statute. Compliance with a certificate-of-title statute is both unnecessary and ineffective to perfect a security interest in inventory to which this subsection applies. Thus, a secured party who finances an automobile dealer that is in the business of selling and leasing its inventory of automobiles can perfect a security interest in all the automobiles by filing a financing statement but not by

For text effective until July 1, 2001, see Appendix to Article 9, post.

SECURED TRANSACTIONS                                    § 28:9–312

leaves the determination of some rules, such as the rule establishing time of perfection (Section 9–516(a)), to the other statutes themselves. Second, this Article explicitly applies some Article 9 filing rules to perfection under other statutes or treaties. See, e.g., Section 9–505. Third, this Article makes other Article 9 rules applicable to security interests perfected by compliance with another statute through the "equivalent to ... filing" provision in the first sentence of Section 9–311(b). The third approach is reflected for the most part in occasional Comments explaining how particular rules apply when perfection is accomplished under Section 9–311(b). See, e.g., Section 9–310, Comment 4; Section 9–315, Comment 6; Section 9–317, Comment 8. The absence of a Comment indicating that a particular filing provision applies to perfection pursuant to Section 9–311(b) does not mean the provision is inapplicable.

7. **Perfection by Possession of Goods Covered by Certificate-of-Title Statute.** A secured party who holds a security interest perfected under the law of State A in goods that subsequently are covered by a State B certificate of title may face a predicament. Ordinarily, the secured party will have four months under State B's Section 9–316(c) and (d) in which to (re)perfect as against a purchaser of the goods by having its security interest noted on a State B certificate. This procedure is

likely to require the cooperation of the debtor and any competing secured party whose security interest has been noted on the certificate. Comment 4(e) to former Section 9–103 observed that "that cooperation is not likely to be forthcoming from an owner who wrongfully procured the issuance of a new certificate not showing the out-of-state security interest, or from a local secured party finding himself in a priority contest with the out-of-state secured party." According to that Comment, "[t]he only solution for the out-of-state secured party under present certificate of title statutes seems to be to reperfect by possession, i.e., by repossessing the goods." But the "solution" may not have worked: Former Section 9–302(4) provided that a security interest in property subject to a certificate-of-title statute "can be perfected only by compliance therewith."

Sections 9–316(d) and (e), 9–311(c), and 9–313(b) of this Article resolve the conflict by providing that a security interest that remains perfected solely by virtue of Section 9–316(e) can be (re)perfected by the secured party's taking possession of the collateral. These sections contemplate only that taking possession of goods covered by a certificate of title will work as a method of perfection. None of these sections creates a right to take possession. Section 9–609 and the agreement of the parties define the secured party's right to take possession.

### Historical and Statutory Notes

Legislative History of Laws
For Law 13–201, see notes following § 28:9–101.

§ 28:9–312.    Perfection of security interests in chattel paper, deposit accounts, documents, goods covered by documents, instruments, investment property, letter-of-credit rights, and money; perfection by permissive filing; temporary perfection without filing or transfer of possession.

(a) A security interest in chattel paper, negotiable documents, instruments, or investment property may be perfected by filing.

(b) Except as otherwise provided in § 28:9–315(c) and (d) for proceeds:

**For text effective until July 1, 2001, see Appendix to Article 9, post.**

(1) A security interest in a deposit account may be perfected only by control under § 28:9–314;

(2) And except as otherwise provided in § 28:9–308(d), a security interest in a letter-of-credit right may be perfected only by control under § 28:9–312; and

(3) A security interest in money may be perfected only by the secured party's taking possession under § 28:9–313.

(c) While goods are in the possession of a bailee that has issued a negotiable document covering the goods:

(1) A security interest in the goods may be perfected by perfecting a security interest in the document; and

(2) A security interest perfected in the document has priority over any security interest that becomes perfected in the goods by another method during that time.

(d) While goods are in the possession of a bailee that has issued a nonnegotiable document covering the goods, a security interest in the goods may be perfected by:

(1) Issuance of a document in the name of the secured party;

(2) The bailee's receipt of notification of the secured party's interest; or

(3) Filing as to the goods.

(e) A security interest in certificated securities, negotiable documents, or instruments is perfected without filing or the taking of possession for a period of 20 days from the time it attaches to the extent that it arises for new value given under an authenticated security agreement.

(f) A perfected security interest in a negotiable document or goods in possession of a bailee, other than one that has issued a negotiable document for the goods, remains perfected for 20 days without filing if the secured party makes available to the debtor the goods or documents representing the goods for the purpose of:

(1) Ultimate sale or exchange; or

(2) Loading, unloading, storing, shipping, transshipping, manufacturing, processing, or otherwise dealing with them in a manner preliminary to their sale or exchange.

(g) A perfected security interest in a certificated security or instrument remains perfected for 20 days without filing if the secured party delivers the security certificate or instrument to the debtor for the purpose of:

(1) Ultimate sale or exchange; or

(2) Presentation, collection, enforcement, renewal, or registration of transfer.

(h) After the 20–day period specified in subsection (e), (f), or (g) expires, perfection depends upon compliance with this article.

(Oct. 26, 2000, D.C. Law 13–201, § 101, 47 DCR 7576.)

Text effective July 1, 2001

548

## § 28:9–312

UNIFORM COMMERCIAL CODE

ity may be conditioned upon giving notification to a prior inventory financer. See Section 9–324.

### Historical and Statutory Notes

**Legislative History of Laws**

For Law 13–201, see notes following § 28:9–101.

### Notes of Decisions

Construction and application    1
Nonperfected security interests    3
Possession by secured party    2

#### 1.  Construction and application

Writing which acknowledged bank's receipt of money and manifested bank's engagement to repay it qualified as "certificate of deposit" (CD) subject to Article 9, without regard to whether writing could be transferred or negotiated. U.C.C. § 9–105(1)(e).  In re Latin Inv. Corp., 1993, 156 B.R. 102.  Secured Transactions ⊆ 88

#### 2.  Possession by secured party

Transaction by which bank in possession of debtor's fund-raising proceeds pursuant to security interest simultaneously credited and debited funds to debtor's account, for purposes of record keeping and compliance with federal election laws, was not lapse in possession and thus did not destroy bank's perfected security interest; funds only momentarily passed through

debtor's account, never left bank and were never made available for debtor's use and thus could not have misled third parties to believe that debtor had control of funds.  Federal Election Campaign Act of 1971, § 302(h)(1), 2 U.S.C.A. § 432(h)(1); D.C.Code 1981, §§ 28:1–101 to 28:10–104, 28:9–203(1)(a), 28:9–304(1).  Tri-State Envelope of Maryland, Inc. v. Americans With Hart, Inc., 1988, 688 F.Supp. 769.  Secured Transactions ⊆ 89

#### 3.  Nonperfected security interests

Assignment of account that falls within scope of Uniform Commercial Code provisions governing assignments, which is not perfected, leaves property interest in assignor against which third-party lien creditor can attach. D.C.Code 1981, §§ 28:9–203(1), 28:9–301(1)(b), 28:9–302(1), 28:9–303(1), 28:9–304(1), 28:9–305; U.C.C. §§ 9–302, 9–302 comment. District of Columbia v. Thomas Funding Corp., 1991, 593 A.2d 1030.  Secured Transactions ⊆ 183

## § 28:9–313.  When possession by or delivery to secured party perfects security interest without filing.

(a) Except as otherwise provided in subsection (b), a secured party may perfect a security interest in negotiable documents, goods, instruments, money, or tangible chattel paper by taking possession of the collateral. A secured party may perfect a security interest in certificated securities by taking delivery of the certificated securities under § 28:8–301.

(b) With respect to goods covered by a certificate of title issued by the District, a secured party may perfect a security interest in the goods by taking possession of the goods only in the circumstances described in § 28:9–316(d).

(c) With respect to collateral other than certificated securities and goods covered by a document, a secured party takes possession of collateral in the possession of a person other than the debtor, the secured party, or a lessee of the collateral from the debtor in the ordinary course of the debtor's business, when:

(1) The person in possession authenticates a record acknowledging that it holds possession of the collateral for the secured party's benefit; or

**Text effective July 1, 2001**

552

§28:9–313

(2) The person takes possession of the collateral after having authenticated a record acknowledging that it will hold possession of collateral for the secured party's benefit.

(d) If perfection of a security interest depends upon possession of the collateral by a secured party, perfection occurs no earlier than the time the secured party takes possession and continues only while the secured party retains possession.

(e) A security interest in a certificated security in registered form is perfected by delivery when delivery of the certificated security occurs under §28:8–301 and remains perfected by delivery until the debtor obtains possession of the security certificate.

(f) A person in possession of collateral is not required to acknowledge that it holds possession for a secured party's benefit.

(g) If a person acknowledges that it holds possession for the secured party's benefit:

(1) The acknowledgment is effective under subsection (c) of this section or §28:8–301(a), even if the acknowledgment violates the rights of a debtor; and

(2) Unless the person otherwise agrees or law other than this article otherwise provides, the person does not owe any duty to the secured party and is not required to confirm the acknowledgment to another person.

(h) A secured party having possession of collateral does not relinquish possession by delivering the collateral to a person other than the debtor or a lessee of the collateral from the debtor in the ordinary course of the debtor's business if the person was instructed before the delivery or is instructed contemporaneously with the delivery:

(1) To hold possession of the collateral for the secured party's benefit; or

(2) To redeliver the collateral to the secured party.

(i) A secured party does not relinquish possession, even if a delivery under subsection (h) violates the rights of a debtor. A person to which collateral is delivered under subsection (h) does not owe any duty to the secured party and is not required to confirm the delivery to another person unless the person otherwise agrees or law other than this article otherwise provides.

(Oct. 26, 2000, D.C. Law 13–201, §101, 47 DCR 7576.)

### Uniform Commercial Code Comment

1. **Source.** Former Sections 9–305, 9–115(6).

2. **Perfection by Possession.** As under the common law of pledge, no filing is required by this Article to perfect a security interest if the secured party takes possession of the collateral. See Section 9–310(b)(6).

This section permits a security interest to be perfected by the taking of possession only when the collateral is goods, instruments, negotiable documents, money, or

For text effective until July 1, 2001, see Appendix to Article 9, post.

553

Case 1:05-cv-01409-GK    Document 2-3    Filed 08/01/2005    Page 14 of 26

SECURED TRANSACTIONS                                    § 28:9–314

ness," so as to qualify as "instrument" under Article 9, a security interest in which could be perfected by possession. U.C.C. § 9–105(1)(i). In re Latin Inv. Corp., 1993, 156 B.R. 102. Secured Transactions ☞ 89

Proprietary lease document for cooperative apartment was not "security" for purposes of Uniform Commercial Code sections providing that perfection by possession is possibility with respect to "instruments," and incorporating definition of security into definition of "instrument"; thus, creditor could not perfect security interest in borrower's right to apartment by creditor's possession of that document. D.C.Code      1981,      §§ 28:8–102(1)(a), 28:9–105(1)(i), 28:9–305. First Sav. Bank of Virginia v. Barclays Bank, S.A., 1992, 618 A.2d 134. Secured Transactions ☞ 89

**2. Possession by secured party**

Transaction by which bank in possession of debtor's fund-raising proceeds pursuant to security interest simultaneously credited and debited funds to debtor's account, for purposes of record keeping and compliance with federal election laws, was not lapse in possession and thus did not destroy bank's perfected security inter-

est; funds only momentarily passed through debtor's account, never left bank and were never made available for debtor's use and thus could not have misled third parties to believe that debtor had control of funds. Federal Election Campaign Act of 1971, § 302(h)(1), 2 U.S.C.A.   § 432(h)(1);   D.C.Code   1981, §§ 28:1–101 to 28:10–104, 28:9–203(1)(a), 28:9–304(1). Tri-State Envelope of Maryland, Inc. v. Americans With Hart, Inc., 1988, 688 F.Supp. 769. Secured Transactions ☞ 89

Bank had continuously perfected security interest in proceeds from sale of debtor's prints, in which bank originally had perfected security interest; bank took possession of proceeds within statutory ten-day period. D.C.Code 1981, §§ 28:9–305, 28:9–306(3)(c). Tri-State Envelope of Maryland, Inc. v. Americans With Hart, Inc., 1988, 688 F.Supp. 769. Secured Transactions ☞ 168

To have perfected security interest in rents, under District of Columbia law, mortgagee must first obtain possession of premises either by consent or by appointment of receiver. In re 1726 Washington, D.C. Partners, 1990, 120 B.R. 1. Secured Transactions ☞ 89

## § 28:9–314. Perfection by control.

(a) A security interest in investment property, deposit accounts, letter-of-credit rights, or electronic chattel paper may be perfected by control of the collateral under § 28:9–104, 28:9–105, 28:9–106, or 28:9–107.

(b) A security interest in deposit accounts, electronic chattel paper, or letter-of-credit rights is perfected by control under § 28:9–104, 28:9–105, or 28:9–107 when the secured party obtains control and remains perfected by control only while the secured party retains control.

(c) A security interest in investment property is perfected by control under § 28:9–106 from the time the secured party obtains control and remains perfected by control until:

(1) The secured party does not have control; and

(2) One of the following occurs:

(A) If the collateral is a certificated security, the debtor has or acquires possession of the security certificate;

(B) If the collateral is an uncertificated security, the issuer has registered or registers the debtor as the registered owner; or

(C) If the collateral is a security entitlement, the debtor is or becomes the entitlement holder.

(Oct. 26, 2000, D.C. Law 13–201, § 101, 47 DCR 7576.)

For text effective until July 1, 2001, see Appendix to Article 9, post.

557

§ 28:9–314                                    UNIFORM COMMERCIAL CODE

### Uniform Commercial Code Comment

1. **Source.** Substantially new; derived in part from former Section 9–115(4).

2. **Control.** This section provides for perfection by control with respect to investment property, deposit accounts, letter-of-credit rights, and electronic chattel paper. For explanations of how a secured party takes control of these types of collateral, see Sections 9–104 through 9–107. Subsection (b) explains when a security interest is perfected by control and how long a security interest remains perfected by control. Like Section 9–313(d) and for the same reasons, subsection (b) makes no reference to the doctrine of "relation back." See Section 9–313, Comment 3.

3. **Investment Property.** Subsection (c) provides a special rule for investment property. Once a secured party has control, its security interest remains perfected by control until the secured party ceases to have control and the debtor receives possession of collateral that is a certificated security, becomes the registered owner of collateral that is an uncertificated security, or becomes the entitlement holder of collateral that is a security entitlement. The result is particularly important in the "repledge" context. See Section 9–207, Comment 5.

In a transaction in which a secured party who has control grants a security interest in investment property or sells outright the investment property, by virtue of the debtor's consent or applicable legal rules, a purchaser from the secured party typically will cut off the debtor's rights in the investment property or be immune from the debtor's claims. See Section 9–207, Comments 5 and 6. If the investment property is a security, the debtor normally would retain no interest in the security following the purchase from the secured party, and a claim of the debtor against the secured party for redemption (Section 9–623) or otherwise with respect to the security would be a purely personal claim. If the investment property transferred by the secured party is a financial asset in which the debtor had a security entitlement credited to a securities account maintained with the secured party as a securities intermediary, the debtor's claim against the secured party could arise as a part of its securities account notwithstanding its personal nature. (This claim would be analogous to a "credit balance" in the securities account, which is a component of the securities account even though it is a personal claim against the intermediary.) In the case in which the debtor may retain an interest in investment property notwithstanding a repledge or sale by the secured party, subsection (c) makes clear that the security interest will remain perfected by control.

### Historical and Statutory Notes

**Legislative History of Laws**

For Law 13–201, see notes following § 28:9–101.

## § 28:9–315. Secured party's rights on disposition of collateral and in proceeds.

(a) Except as otherwise provided in this article and in § 28:2–403(2):

(1) A security interest or agricultural lien continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof unless the secured party authorized the disposition free of the security interest or agricultural lien; and

(2) A security interest attaches to any identifiable proceeds of collateral.

**Text effective July 1, 2001**

558

SECURED TRANSACTIONS                                          § 28:9–315

(b) Proceeds that are commingled with other property are identifiable proceeds:

(1) If the proceeds are goods, to the extent provided by § 28:9–336; and

(2) If the proceeds are not goods, to the extent that the secured party identifies the proceeds by a method of tracing, including application of equitable principles, that is permitted under law other than this article with respect to commingled property of the type involved.

(c) A security interest in proceeds is a perfected security interest if the security interest in the original collateral was perfected.

(d) A perfected security interest in proceeds becomes unperfected on the 21st day after the security interest attaches to the proceeds unless:

(1) The following conditions are satisfied:

(A) A filed financing statement covers the original collateral;

(B) The proceeds are collateral in which a security interest may be perfected by filing in the office in which the financing statement has been filed; and

(C) The proceeds are not acquired with cash proceeds;

(2) The proceeds are identifiable cash proceeds; or

(3) The security interest in the proceeds is perfected other than under subsection (c) when the security interest attaches to the proceeds or within 20 days thereafter.

(e) If a filed financing statement covers the original collateral, a security interest in proceeds which remains perfected under subsection (d)(1) becomes unperfected at the later of:

(1) When the effectiveness of the filed financing statement lapses under § 28:9–515 or is terminated under § 28:9–513; or

(2) The 21st day after the security interest attaches to the proceeds.

(Oct. 26, 2000, D.C. Law 13–201, § 101, 47 DCR 7576.)

### Uniform Commercial Code Comment

1. **Source.** Former Section 9–306.

2. **Continuation of Security Interest or Agricultural Lien Following Disposition of Collateral.** Subsection (a)(1), which derives from former Section 9–306(2), contains the general rule that a security interest survives disposition of the collateral. In these cases, the secured party may repossess the collateral from the transferee or, in an appropriate case, maintain an action for conversion. The secured party may claim both any proceeds and the original collateral but, of course, may have only one satisfaction.

In many cases, a purchaser or other transferee of collateral will take free of a security interest, and the secured party's only right will be to proceeds. For example, the general rule does not apply, and a security interest does not continue in collateral, if the secured party authorized the disposition, in the agreement that contains the security agreement or otherwise. Subsection (a)(1) adopts the view of PEB Commentary No. 3 and makes explicit that the authorized disposition to which it refers is an authorized disposition "free of" the security interest or agricultural lien. The secured party's right to proceeds under

For text effective until July 1, 2001, see Appendix to Article 9, post.

SECURED TRANSACTIONS                                      § 28:9–316

setoff against borrower's demand accounts on
deposit with bank. D.C.Code 1981,
§§ 28:9–311, 28:9–501 to 28:9–507; U.C.C.
§ 9–101 et seq. Martens v. Hadley Memorial
Hosp., 1990, 729 F.Supp. 1391. Banks And
Banking ⬥ 134(1)

**5. Punitive damages**

Where chattel mortgagee, which held mort-
gage created by dealer, repossessed automobile
without notice to buyer, although it knew that
buyer held title to automobile, and obtained
new title for automobile on basis of deliberate
and materially false representations to Mary-
land Department of Motor Vehicles, award of
punitive damages to buyer in his suit against
chattel mortgagee was proper. Franklin Inv.
Co. v. Homburg (App. 1969) 252 A.2d 95. Se-
cured Transactions ⬥ 243

## § 28:9–316. Continued perfection of security interest following change in governing law.

(a) A security interest perfected pursuant to the law of the jurisdiction designated in § 28:9–301(1) or 28:9–305(c) remains perfected until the earliest of:

(1) The time perfection would have ceased under the law of that jurisdiction;

(2) The expiration of 4 months after a change of the debtor's location to another jurisdiction; or

(3) The expiration of one year after a transfer of collateral to a person that thereby becomes a debtor and is located in another jurisdiction; or

(b) If a security interest described in subsection (a) becomes perfected under the law of the other jurisdiction before the earliest time or event described in that subsection, it remains perfected thereafter. If the security interest does not become perfected under the law of the other jurisdiction before the earliest time or event, it becomes unperfected and is deemed never to have been perfected as against a purchaser of the collateral for value.

(c) A possessory security interest in collateral, other than goods covered by a certificate of title and as-extracted collateral consisting of goods, remains continuously perfected if:

(1) The collateral is located in one jurisdiction and subject to a security interest perfected under the law of that jurisdiction;

(2) Thereafter the collateral is brought into another jurisdiction; and

(3) Upon entry into the other jurisdiction, the security interest is perfected under the law of the other jurisdiction.

(d) Except as otherwise provided in subsection (e), a security interest in goods covered by a certificate of title which is perfected by any method under the law of another jurisdiction when the goods become covered by a certificate of title from the District remains perfected until the security interest would have become unperfected under the law of the other jurisdiction had the goods not become so covered.

(e) A security interest described in subsection (d) becomes unperfected as against a purchaser of the goods for value and is deemed never to have been perfected as against a purchaser of the goods for value if the applicable requirements for perfection under § 28:9–311(b) or 28:9–313 are not satisfied before the earlier of:

**For text effective until July 1, 2001, see Appendix to Article 9, post.**

§ 28:9–316                                    UNIFORM COMMERCIAL COD

(1) The time the security interest would have become unperfected und
the law of the other jurisdiction had the goods not become covered b
certificate of title from the District; or

(2) The expiration of 4 months after the goods had become so covered.

(f) A security interest in deposit accounts, letter-of-credit rights, or inve
ment property which is perfected under the law of the bank's jurisdiction, t
issuer's jurisdiction, a nominated person's jurisdiction, the securities interme
ary's jurisdiction, or the commodity intermediary's jurisdiction, as applicab
remains perfected until the earlier of:

(1) The time the security interest would have become unperfected und
the law of that jurisdiction; or

(2) The expiration of 4 months after a change of the applicable jurisdicti
to another jurisdiction.

(g) If a security interest described in subsection (f) becomes perfected und
the law of the other jurisdiction before the earlier of the time or the end of th
period described in that subsection, it remains perfected thereafter. If th
security interest does not become perfected under the law of the other jurisdi
tion before the earlier of that time or the end of that period, it becom
unperfected and is deemed never to have been perfected as against a purchas
of the collateral for value.

(Oct. 26, 2000, D.C. Law 13–201, § 101, 47 DCR 7576.)

### Uniform Commercial Code Comment

1. **Source.** Former Section 9–103(1)(d), (2)(b), (3)(e), as modified.

2. **Continued Perfection.** This section deals with continued perfection of security interests that have been perfected under the law of another jurisdiction. The fact that the law of a particular jurisdiction ceases to govern perfection under Sections 9–301 through 9–307 does not necessarily mean that a security interest perfected under that law automatically becomes unperfected. To the contrary: This section generally provides that a security interest perfected under the law of one jurisdiction remains perfected for a fixed period of time (four months or one year, depending on the circumstances), even though the jurisdiction whose law governs perfection changes. However, cessation of perfection under the law of the original jurisdiction cuts short the fixed period. The four-month and one-year periods are long enough for a secured party to discover in most cases that

the law of a different jurisdiction gover perfection and to reperfect (typically filing) under the law of that jurisdictio If a secured party properly reperfects security interest before it becomes unpe fected under subsection (a), then the sec rity interest remains perfected continuou ly thereafter. See subsection (b).

**Example 1:** Debtor is a general partner ship whose chief executive office is i Pennsylvania. Lender perfects a securit interest in Debtor's equipment by filing Pennsylvania on May 15, 2002. On Apr 1, 2005, without Lender's knowledg Debtor moves its chief executive office t New Jersey. Lender's security interest re mains perfected for four months after th move. See subsection (a)(2).

**Example 2:** Debtor is a general partner ship whose chief executive office is i Pennsylvania. Lender perfects a securit interest in Debtor's equipment by filing i Pennsylvania on May 15, 2002. On Apr

**Text effective July 1, 2001**

564

SECURED TRANSACTIONS                                                        § 28:9–317

ance of a certificate of title by another jurisdiction causes a security interest noted thereon to become unperfected.) If Lender's security interest remains perfected, it is senior to Creditor's judicial lien.

**Example 9:** Under the facts in Example 8, five months after Debtor applies for an Indiana certificate of title, Debtor sells the automobile to Buyer. Under subsection (e)(2), because Lender did not reperfect within the four months after the goods became covered by the Indiana certificate of title, Lender's security interest is deemed never to have been perfected against Buyer. Under Section 9–317(b), Buyer is likely to take free of the security interest. Lender could have protected itself by perfecting its security interest either under Indiana's certificate-of-title statute, see Section 9–311, or, if it had a right to do so under an agreement or Section 9–609, by taking possession of the automobile. See Section 9–313(b).

The results in Examples 8 and 9 do not depend on the fact that the original perfection was achieved by notation on a certificate of title. Subsection (d) applies regardless of the method by which a security interest is perfected under the law of another jurisdiction when the goods became covered by a certificate of title from this State.

Section 9–337 affords protection to a limited class of persons buying or acquiring a security interest in the goods while a security interest is perfected under the law of another jurisdiction but after this State has issued a clean certificate of title.

6. **Deposit Accounts, Letter-of-Credit Rights, and Investment Property.** Subsections (f) and (g) address changes in the jurisdiction of a bank, issuer of an uncertificated security, issuer of or nominated person under a letter of credit, securities intermediary, and commodity intermediary. The provisions are analogous to those of subsections (a) and (b).

7. **Agricultural Liens.** This section does not apply to agricultural liens.

**Example 10:** Supplier holds an agricultural lien on corn. The lien arises under an Iowa statute. Supplier perfects by filing a financing statement in Iowa, where the corn is located. See Section 9–302. Debtor stores the corn in Missouri. Assume the Iowa agricultural lien survives or an agricultural lien arises under Missouri law (matters that this Article does not govern). Once the corn is located in Missouri, Missouri becomes the jurisdiction whose law governs perfection. See Section 9–302. Thus, the agricultural lien will not be perfected unless Supplier files a financing statement in Missouri.

### Historical and Statutory Notes

**Legislative History of Laws**
For Law 13–201, see notes following § 28:9–101.

### *Subpart 3. Priority.*

## § 28:9–317. Interests that take priority over or take free of security interest or agricultural lien.

(a) A security interest or agricultural lien is subordinate to the rights of:

(1) A person entitled to priority under § 28:9–322; and

(2) Except as otherwise provided in subsection (e), a person that becomes a lien creditor before the earlier of the time:

(A) The security interest or agricultural lien is perfected; or

**For text effective until July 1, 2001, see Appendix to Article 9, post.**

(B) One of the conditions specified in § 28:9–203(b)(3) is met and a financing statement covering the collateral is filed.

(b) Except as otherwise provided in subsection (e), a buyer, other than a secured party, of tangible chattel paper, documents, goods, instruments, or a security certificate takes free of a security interest or agricultural lien if the buyer gives value and receives delivery of the collateral without knowledge of the security interest or agricultural lien and before it is perfected.

(c) Except as otherwise provided in subsection (e), a lessee of goods takes free of a security interest or agricultural lien if the lessee gives value and receives delivery of the collateral without knowledge of the security interest or agricultural lien and before it is perfected.

(d) A licensee of a general intangible or a buyer, other than a secured party, of accounts, electronic chattel paper, general intangibles, or investment property other than a certificated security takes free of a security interest if the licensee or buyer gives value without knowledge of the security interest and before it is perfected.

(e) Except as otherwise provided in §§ 28:9–320 and 28:9–321, if a person files a financing statement with respect to a purchase-money security interest before or within 20 days after the debtor receives delivery of the collateral, the security interest takes priority over the rights of a buyer, lessee, or lien creditor which arise between the time the security interest attaches and the time of filing.

(Oct. 26, 2000, D.C. Law 13–201, § 101, 47 DCR 7576.)

### Uniform Commercial Code Comment

1. **Source.** Former Sections 9–301, 2A–307(2).

2. **Scope of This Section.** As did former Section 9–301, this section lists the classes of persons who take priority over, or take free of, an unperfected security interest. Section 9–308 explains when a security interest or agricultural lien is "perfected." A security interest that has attached (see Section 9–203) but as to which a required perfection step has not been taken is "unperfected." Certain provisions have been moved from former Section 9–301. The definition of "lien creditor" now appears in Section 9–102, and the rules governing priority in future advances are found in Section 9–323.

3. **Competing Security Interests.** Section 9–322 states general rules for determining priority among conflicting security interests and refers to other sections that state special rules of priority in a variety of situations. The security interests given priority under Section 9–322 and the other sections to which it refers take priority in general even over a perfected security interest. *A fortiori* they take priority over an unperfected security interest.

4. **Filed but Unattached Security Interest vs. Lien Creditor.** Under former Section 9–301(1)(b), a lien creditor's rights had priority over an unperfected security interest. Perfection required attachment (former Section 9–303) and attachment required the giving of value (former Section 9–203). It followed that, if a secured party had filed a financing statement but the debtor had not entered into a security agreement and value had not yet been given, an intervening lien creditor whose lien arose after filing but before attachment of the security interest acquired

## § 28:9–327

## UNIFORM COMMERCIAL CODE

4. **Priority of Bank.** Under paragraph (3), the security interest of the bank with which the deposit account is maintained normally takes priority over all other conflicting security interests in the deposit account, regardless of whether the deposit account constitutes the competing secured party's original collateral or its proceeds. A rule of this kind enables banks to extend credit to their depositors without the need to examine either the public record or their own records to determine whether another party might have a security interest in the deposit account.

A secured party who takes a security interest in the deposit account as original collateral can protect itself against the results of this rule in one of two ways. It can take control of the deposit account by becoming the bank's customer. Under paragraph (4), this arrangement operates to subordinate the bank's security interest. Alternatively, the secured party can obtain a subordination agreement from the bank. See Section 9–339.

A secured party who claims the deposit account as proceeds of other collateral can reduce the risk of becoming junior by obtaining the debtor's agreement to deposit proceeds into a specific cash-collateral account and obtaining the agreement of that bank to subordinate all its claims to those of the secured party. But if the debtor violates its agreement and deposits funds into a deposit account other than the cash-collateral account, the secured party risks being subordinated.

5. **Priority in Proceeds of, and Funds Transferred from, Deposit Account.** The priority afforded by this section does not extend to proceeds of a deposit account. Rather, Section 9–322(c) through (e) and the provisions referred to in Section 9–322(f) govern priorities in proceeds of a deposit account. Section 9–315(d) addresses continuation of perfection in proceeds of deposit accounts. As to funds transferred from a deposit account that serves as collateral, see Section 9–332.

### Historical and Statutory Notes

**Legislative History of Laws**

For Law 13–201, see notes following § 28:9–101.

## § 28:9–328.  Priority of security interests in investment property.

The following rules govern priority among conflicting security interests in the same investment property.

(1) A security interest held by a secured party having control of investment property under § 28:9–106 has priority over a security interest held by a secured party that does not have control of the investment property.

(2) Except as otherwise provided in paragraphs (3) and (4), conflicting security interests held by secured parties, each of which has control under § 28:9–106, rank according to priority in time of:

(A) If the collateral is a security, obtaining control;

(B) If the collateral is a security entitlement carried in a securities account and:

(i) If the secured party obtained control under § 28:8–106(d)(1), the secured party's becoming the person for which the securities account is maintained;

(ii) If the secured party obtained control under § 28:8–106(d)(2), the securities intermediary's agreement to comply with the secured party's

Text effective July 1, 2001

600

entitlement orders with respect to security entitlements carried or to be carried in the securities account; or

(iii) If the secured party obtained control through another person under § 28:8–106(d)(3), the time on which priority would be based under this paragraph if the other person were the secured party; or

(C) If the collateral is a commodity contract carried with a commodity intermediary, the satisfaction of the requirement for control specified in § 28:9–106(b)(2) with respect to commodity contracts carried or to be carried with the commodity intermediary.

(3) A security interest held by a securities intermediary in a security entitlement or a securities account maintained with the securities intermediary has priority over a conflicting security interest held by another secured party.

(4) A security interest held by a commodity intermediary in a commodity contract or a commodity account maintained with the commodity intermediary has priority over a conflicting security interest held by another secured party.

(5) A security interest in a certificated security in registered form which is perfected by taking delivery under § 28:9–313(a) and not by control under § 28:9–314 has priority over a conflicting security interest perfected by a method other than control.

(6) Conflicting security interests created by a broker, securities intermediary, or commodity intermediary which are perfected without control under § 28:9–106 rank equally.

(7) In all other cases, priority among conflicting security interests in investment property is governed by §§ 28:9–322 and 28:9–323.

(Oct. 26, 2000, D.C. Law 13–201, § 101, 47 DCR 7576.)

### Uniform Commercial Code Comment

1. **Source.** Former Section 9–115(5).

2. **Scope of This Section.** This section contains the rules governing the priority of conflicting security interests in investment property. Paragraph (1) states the most important general rule–that a secured party who obtains control has priority over a secured party who does not obtain control. Paragraphs (2) through (4) deal with conflicting security interests each of which is perfected by control. Paragraph (5) addresses the priority of a security interest in a certificated security which is perfected by delivery but not control. Paragraph (6) deals with the relatively unusual circumstance in which a broker, securities intermediary, or commodity intermediary has created conflicting security interests none of which is perfected by control. Paragraph (7) provides that the general priority rules of Sections 9–322 and 9–323 apply to cases not covered by the specific rules in this section. The principal application of this residual rule is that the usual first in time of filing rule applies to conflicting security interests that are perfected only by filing. Because the control priority rule of paragraph (1) provides for the ordinary cases in which persons purchase securities on margin credit from their brokers, there is no need for special rules for purchase-money security interests. See also Section 9–103 (limiting purchase-money collateral to goods and software).

For text effective until July 1, 2001, see Appendix to Article 9, post.

### Historical and Statutory Notes

**Effect of Amendments**

D.C. Law 13–289 designated the existing text as subsec. (a) and added subsec. (b).

**Legislative History of Laws**

For D.C. Law 13–289, see notes following § 50–401.

## § 50–1108.  "Motor vehicle" defined.

As used in this chapter the term "motor vehicle" means all vehicles propelled by internal–combustion engines, electricity, or steam.  The term "motor vehicle" shall not include traction engines, road rollers, vehicles propelled only upon rails or tracks, electric personal assistive mobility devices, as defined by § 50–2201.02(12), and battery–operated wheelchairs when operated by a handicapped person at speeds not exceeding 10 miles per hour.

(Feb. 18, 1938, 52 Stat. 78, ch. 31, § 8, as added Mar. 15, 1985, D.C. Law 5–176, § 10, 32 DCR 748; Mar. 25, 2003, D.C. Law 14–235, § 4, 49 DCR 9788; Mar. 13, 2004, D.C. Law 15–105, § 90(a), 51 DCR 881.)

### Historical and Statutory Notes

**Effect of Amendments**

D.C. Law 14–235 rewrote the section which had read as follows:

"As used in this chapter the term 'motor vehicle' means all vehicles propelled by internal combustion engines, electricity, or steam.  The term 'motor vehicle' shall not include traction engines, road rollers, vehicles propelled only upon rails or tracks, and battery-operated wheelchairs when operated by a handicapped person at speeds not exceeding 10 miles per hour."

D.C. Law 15–105 validated a previously made technical correction.

**Legislative History of Laws**

For Law 14–235, see notes following § 50–601.

For Law 15–105, see notes following § 50–203.

**Miscellaneous Notes**

Expiration of Law 14–235: Section 14 of D.C. Law 14–235 provided that the act shall expire on October 1, 2005.

## § 50–1109.  Notification of inspection sticker expiration.

The Mayor shall notify an owner of the expiration date of the owner's vehicle inspection sticker.  The required notice shall be mailed to the named owner at the address of record at least 30 days prior to the date of expiration.  If the Director does not deliver the notice as required, the first of any tickets issued for failure to display a current inspection sticker for that inspection period may be dismissed through mail or in-person adjudication.

(Feb. 18, 1938, ch. 31, § 9, as added Apr. 8, 2005, D.C. Law 15–307, § 703, 52 DCR 1700.)

### Historical and Statutory Notes

**Legislative History of Laws**

For Law 15–307, see notes following § 50–1331.01.

# Chapter 12

# Liens on Motor Vehicles or Trailers.

**Section**
50–1201.  Definitions.
50–1212.  Recordation fee.

## § 50–1201.  Definitions.

(a) "Person" shall include one or more individuals, firms or unincorporated associations, or corporations.

(b) "Director" shall mean the Director of Vehicles and Traffic of the District of Columbia, including assistants or agents duly designated by the Mayor of the District of Columbia.

(c) "Recorder" shall mean the Recorder of Deeds of the District of Columbia, including assistants or agents duly designated by the Recorder.

VEHICLES AND TRAFFIC                                                    § 50–1212

(d) "Certificate" shall mean a certificate of title for a motor vehicle or trailer issued by the Director.

(e) "Owner" shall mean the person to whom such certificate is issued by the Director.

(f) "Lien" shall mean any right or interest in or to, any security interest as defined in § 28:1–201 of the District of Columbia Official Code in, or lien or encumbrance upon any motor vehicle or trailer, or the equipment or accessories affixed or sold to be affixed thereto, in favor of a person other than the owner, except:

(1) A sale of such motor vehicle or trailer accompanied by delivery of possession and on execution of the assignment on the back of the certificate covering it; or

(2) Any possessory lien now or hereafter provided by law or any lien acquired in any judicial proceeding.

(g) "Instrument" shall mean any security agreement, as defined in § 28:9–105(l) of the District of Columbia Official Code, creating such lien.

(h) "Lien information" shall mean the amount, kind, date of lien, name and address of holder or secured party as defined in § 28:9–105(m) of the District of Columbia Official Code, and Recorder's record number, if any.

(i) "Motor vehicle" shall mean all vehicles propelled by internal–combustion engines, electricity, or steam.  The term "motor vehicle" shall not include traction engines, road rollers, vehicles propelled only upon rails or tracks, electric personal assistive mobility devices, as defined by § 50–2201.02(12), and battery–operated wheelchairs when operated by a handicapped person at speeds not exceeding 10 miles per hour.

(July 2, 1940, 54 Stat. 736, ch. 527, § 1; Dec. 30, 1963, 77 Stat. 771, Pub. L. 88–243, § 6(a); Mar. 15, 1985, D.C. Law 5–176, § 9, 32 DCR 748; Mar. 25, 2003, D.C. Law 14–235, § 5, 49 DCR 9788; Mar. 13, 2004, D.C. Law 15–105, § 90(a), 51 DCR 881.)

### Historical and Statutory Notes

**Effect of Amendments**

D.C. Law 14–235 rewrote subsec. (i) which had read as follows:

"(i) 'Motor vehicle' shall mean all vehicles propelled by internal-combustion engines, electricity, or steam. The term 'motor vehicle' shall not include traction engines, road rollers, vehicles propelled only upon rails or tracks, and battery-operated wheelchairs when operated by a handicapped person at speeds not exceeding 10 miles per hour."

D.C. Law 15–105, in subsec. (i), validated a previously made technical correction.

**Legislative History of Laws**

For Law 14–235, see notes following § 50–601.

For Law 15–105, see notes following § 50–203.

**Miscellaneous Notes**

Expiration of Law 14–235: Section 14 of D.C. Law 14–235 provided that the act shall expire on October 1, 2005.

## § 50–1212.  Recordation fee.

The fee for recording liens or assignments of liens upon a certificate shall be the sum of $20 for each lien or assignment of lien on each motor vehicle or trailer contained in the instrument, which fee shall include the charge for recording the release of such lien.

(July 2, 1940, 54 Stat. 739, ch. 527, § 12; Dec. 15, 1945, 59 Stat. 610, ch. 578; June 19, 1948, 62 Stat. 493, ch. 522, § 1; Aug. 17, 1991, D.C. Law 9–30, § 6, 38 DCR 4215; June 5, 2003, D.C. Law 14–307, § 1703, 49 DCR 11664.)

### Historical and Statutory Notes

**Effect of Amendments**

D.C. Law 14–307 substituted "$20" for "$15".

**Emergency Act Amendments**

For temporary (90 day) amendment of section, see § 1703 of Fiscal Year 2003 Budget Support Amendment Emergency Act of 2002 (D.C. Act 14–544, December 4, 2002, 49 DCR 11700).

For temporary (90 day) amendment of section, see § 1703 of the Fiscal Year 2003 Budget Support Amendment Congressional Review Emergency Act

of 2003 (D.C. Act 15–27, February 24, 2003, 50 DCR 2151).

For temporary (90 day) amendment of section, see § 1703 of Fiscal Year 2003 Budget Support Amendment Second Congressional Review Emergency Act of 2003 (D.C. Act 15–103, June 20, 2003, 50 DCR 5499).

**Legislative History of Laws**

Law 14–307, the "Fiscal Year 2003 Budget Support Amendment Act of 2002", was introduced in

(2) Any possessory lien now or hereafter provided by law or any lien acquired in any judicial proceeding.

(g) "Instrument" shall mean any security agreement, as defined in 28:9–105(l) of the District of Columbia Official Code, creating such lien.

(h) "Lien information" shall mean the amount, kind, date of lien, name and address of holder or secured party as defined in § 28:9–105(m) of the District of Columbia Official Code, and Recorder's record number, if any.

(i) "Motor vehicle" shall mean all vehicles propelled by internal-combustion engines, electricity, or steam. The term "motor vehicle" shall not include traction engines, road rollers, vehicles propelled only upon rails or tracks, and battery-operated wheelchairs when operated by a handicapped person at speeds not exceeding 10 miles per hour.

July 2, 1940, 54 Stat. 736, ch. 527, § 1; Dec. 30, 1963, 77 Stat. 771, Pub. L. 88–243, § 6(a); Mar. 15, 1985, D.C. Law 5–176, § 9, 32 DCR 748.)

### Historical and Statutory Notes

**Prior Codifications**

1981 Ed., § 40–1001.

1973 Ed., § 40–701.

**Legislative History of Laws**

For legislative history of D.C. Law 5–176, see Historical and Statutory Notes following § 50–1108.

**Change in Government**

This section originated at a time when local government powers were delegated to a Board of Commissioners of the District of Columbia. See Acts Relating to the Establishment of the District of Columbia and its Various Forms of Governmental Organization in Volume 1). Section 401 of Reorganization Plan No. 3 of 1967 (see Reorganization Plans in Volume 1) transferred all of the functions of the Board of Commissioners under this section to a single Commissioner. The District of Columbia Self-Government and Governmental Reorganization Act, 87 Stat. 818, § 711 (D.C. Code, § 1–207.11), abolished the District of Columbia Council and the Office of Commissioner of the District of Columbia. These branches of government were replaced by the Council of the District of Columbia and the Office of Mayor of the District of Columbia, respectively. Accordingly, and also pursuant to § 714(a) of such Act (D.C. Code, § 1–207.14(a)), appropriate changes in terminology were made in this section.

**Miscellaneous Notes**

Department of Vehicles and Traffic abolished: See Historical and Statutory Notes following § 50–2201.03.

### Cross References

**Section References**

This section is referred to in § 28:9–302.

### 50–1202. Lien to appear on certificate of title; effect of other liens.

During the time a certificate is outstanding for any motor vehicle or trailer, no lien against such motor vehicle or trailer or any equipment or accessories affixed or sold to be affixed thereto shall be valid except as between the parties and as to other persons having actual notice, unless and until entered on such certificate as hereinafter set forth; provided, that the foregoing shall not apply to a lien or liens in existence on January 1, 1940, against a motor vehicle or trailer for which a certificate is outstanding on January 1, 1941, or any equipment or accessories affixed thereto. The filing provisions of Article 9 of Subtitle I of Title 28 of the District of Columbia Official Code do not apply to

liens recorded as herein provided, and a lien has no greater validity or effect during the time a certificate is outstanding for the motor vehicle or trailer covered thereby by reason of the fact that the lien has been filed in accordance with that article.

(July 2, 1940, 54 Stat. 736, ch. 527, § 2; Dec. 30, 1963, 77 Stat. 771, Pub. L. 88–243, § 6(b).)

## Historical and Statutory Notes

**Prior Codifications**
1981 Ed., § 40–1002.
1973 Ed., § 40–702.

## Library References

**Key Numbers**
Automobiles ⟜20.
Secured Transactions ⟜87.
Westlaw Key Number Searches: 48Ak20; 349Ak87.

**Encyclopedias**
C.J.S. Motor Vehicles § 42.
C.J.S. Secured Transactions §§ 57 to 58, 63.

## Notes of Decisions

In general    1
Common law liens    4
Impounded vehicles    5
Perfection of liens    2
Priority of liens    3

### 1.  In general

Where automobile dealer had a "floor plan" arrangement by which plaintiff would advance funds to dealer for purchase of automobiles and would take back chattel mortgages, and dealer had arrangement whereby finance company would purchase the conditional sales contracts executed by buyers of automobiles, and the buyer of an automobile gave conditional sales contract which was assigned to finance company but company never received title certificate because dealer had financial difficulties and never repaid plaintiff, plaintiff was estopped from asserting lien against buyer who had no actual knowledge of plaintiff's recorded chattel mortgage lien, and the buyer, not being in default, was entitled to use and enjoyment of automobile, and finance company was entitled to have its lien recorded on certificate of title. D.C.Code 1951, §§ 40–102, 40–701, 40–702, 40–710, 42–101.  Smith, Kirkpatrick & Co. v. Continental Autos, Limited, D.D.C1960, 184 F.Supp. 764.  Automobiles ⟜ 19; Estoppel ⟜ 75

### 2.  Perfection of liens

Creditor-automobile dealership's security interest in Chapter 7 debtor's vehicle, which was purchased in Maryland, was not perfected under District of Columbia law where no certificate of title was issued for the car, and creditor

presented no evidence that it had filed a financing statement.  D.C.Code 1981, §§ 40–1001 et seq., 40–1002.  In re Johnson, 1999, 230 B.R. 466.  Secured Transactions ⟜ 87

Under District of Columbia law, security interest in automobile is perfected by entering a lien on the certificate title.  D.C.Code 1981, § 40–1002.  In re Johnson, 1999, 230 B.R. 466.  Secured Transactions ⟜ 87

### 3.  Priority of liens

A prior lien gives a prior legal right, except where statute varies common-law rule.  District of Columbia v. Franklin Inv. Co., Inc., 1979, 404 A.2d 536.  Liens ⟜ 12

### 4.  Common law liens

A common-law lien, in contrast to a statutory lien, arises by implication of law and bestows a privilege to retain property in possession as security for owner's debt or obligation.  District of Columbia v. Franklin Inv. Co., Inc., 1979, 404 A.2d 536.  Liens ⟜ 5

### 5.  Impounded vehicles

When property in custody of police department is motor vehicle with liens of record, unclaimed by lienholder, sale proceeds are available for payment of liens as well as payments of sale and custody which, in effect, allows buyer to take free and clear of all liens of record.  D.C.C.E. § 4–160(b).  District of Columbia v. Franklin Inv. Co., Inc., 1979, 404 A.2d 536.  Forfeitures ⟜ 10

Rather than creating statutory liens, statute authorizing owner or other duly authorized person to repossess or secure release of impounded vehicle allows substitution of collateral security