**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**In re Philip Wayne Dorton, Debtor,**

**KEVIN R. MCCARTHY, TRUSTEE,**

**Plaintiff/Appellant,**

**v.**

**BMW BANK OF NORTH AMERICA,**

**Defendant/Appellee.**

**Civil Action No. 05-1409 (GK)**

**MEMORANDUM OPINION**

Appellant Kevin R. McCarthy, the Chapter 7 trustee ("Trustee"), appeals a judgment from the United States Bankruptcy Court for the District of Columbia dismissing his adversary proceeding. The Bankruptcy Court held that the security interest in a 2000 BMW 328i of Appellee BMW Bank of North America ("BMW") was not avoidable under 11 U.S.C. § 547 and entered judgment consistent with its decision on June 21, 2005.

This matter is before the Court on the Trustee's appeal of the Bankruptcy Court's judgment, [#2]. Upon consideration of the parties' briefs and the entire record herein, and for the reasons stated below, the Bankruptcy Court's judgment is **affirmed**.

## I. BACKGROUND[1]

On October 13, 2003, the Debtor, Philip Wayne Dorton ("the Debtor"), purchased and took possession of a 2000 BMW 328i ("the Car"). The Debtor granted a security interest in the Car to the dealer via a contract, which the dealer then assigned to BMW. On December 24, 2003, the District of Columbia Department of Motor Vehicles ("DMV") issued a certificate of title for the Car, noting BMW's security interest. BMW did not file a financing statement with the District of Columbia.

On January 30, 2004, less than 90 days after BMW's lien was noted on the certificate of title, the Debtor petitioned for relief under Chapter 7 of the Bankruptcy Code, listing the Car as the bankruptcy estate's only asset.[2]

The Trustee moved for summary judgment in the Bankruptcy Court seeking to avoid BMW's security interest as a preference, pursuant to 11 U.S.C. § 547(b), and ancillary relief. The Bankruptcy Court denied the Trustee's motion and dismissed the adversary proceeding, holding that BMW perfected its security interest under the common law from the time the Debtor took possession of the Car until

---

[1] The parties do not dispute the relevant facts of this case. See Appellant's Br. at 1; Appellee's Br. at 1. Therefore, unless otherwise noted, the facts set forth herein are taken from the Bankruptcy Court's opinion. See McCarthy v. BMW Bank of N. Am. (In re: Dorton), 327 B.R. 14 (Bankr. D.D.C. 2005).

[2] There are approximately $20,000 of allowed filed proofs of claim against the bankruptcy estate.

issuance of the certificate and continuously perfected said interest pursuant to D.C. Code § 50-1202 thereafter. The Bankruptcy Court thus concluded that the Trustee could not avoid BMW's security interest in the Car.

**II. STANDARD OF REVIEW**

Under 28 U.S.C. § 158, this Court has jurisdiction to hear appeals concerning "judgments, orders, and decrees" made by the Bankruptcy Court. 28 U.S.C. § 158; see In re St. Charles Pres. Investors. Ltd., 112 B.R. 469, 471 n.2 (D.D.C. 1990) (citing In re Jersey City Med. Ctr., 817 F.2d 1055, 1059 (3d Cir. 1987)).

This Court must review matters of law de novo and may reverse the Bankruptcy Court's factual findings only if they are clearly erroneous. See In re St. Charles Pres. Investors. Ltd., 112 B.R. at 471 n.2 (citing In re Jersey City Med. Ctr., 817 F.2d at 1059). "On appeal from a bankruptcy court, a district court may affirm, modify, or reverse a bankruptcy court's judgment, or remand with instructions for further proceedings." In re WPG, Inc., 282 B.R. 66, 68 (D.D.C. 2002) (citing Fed. R. Bankr. P. 8013).

**III. ANALYSIS**

**A. Overview**

This case presents a matter of first impression – namely, whether in the District of Columbia, a consumer-purchased car may be subject to a perfected security interest prior to DMV's issuance of a certificate of title noting the security interest.

Appellant's Br. at 2-3.

Judge Teel answered this question in the affirmative. He held that

> BMW's security interest was continuously perfected, within the meaning of that term under 11 U.S.C. § 547(e)(1)(B), from the moment the debtor obtained possession of the car, first under the common law rule of first in time, first in right, and then, upon issuance of the certificate of title for the car, under D.C. Code § 50-1202 by reason of the security interest being noted on the certificate prior to its issuance.

327 B.R. at 16. Judge Teel further held that because no preference existed in this case, the Trustee could not avoid BMW's lien on the Car.

In this appeal, as in the proceedings below, the Trustee argues that BMW could not and did not perfect its security interest in the Car until DMV issued the certificate of title noting said interest on December 24, 2003. The Trustee disputes the Bankruptcy Court's holding that the common law rule of first in time, first in right applies prior to the issuance of the certificate of title. The Trustee argues that since the Debtor petitioned for bankruptcy relief less than 90 days after BMW's lien was noted on the certificate of title, the Trustee is entitled to avoid BMW's lien pursuant to the preference period set forth in 11 U.S.C. § 547. For the reasons stated below, the Court rejects the Trustee's argument and **affirms** Judge Teel's ruling.

### B. BMW Continuously Perfected Its Security Interest in the Car from the Time the Debtor Took Possession Until After the Certificate of Title Issued

The Trustee "disputes the Bankruptcy Court's decision solely on the question of whether, in the District of Columbia, a consumer-purchased car may be subject to a perfected security interest prior to the issuance of a certificate of title noting the security interest." Appellant's Br. at 2-3.

Whether BMW took the required steps to perfect its security interest is governed by state law. Fidelity Fin. Servs., Inc. v. Fink, 522 U.S. 211, 213 n.1 (1998).[3] Under District of Columbia law, "it is axiomatic that a prior lien gives a prior legal right ('first in time, first in right'), except where statute varies the common law rule." District of Columbia v. Franklin Inv. Co., 404 A.2d 536, 540 (D.C. 1979) (citations omitted); District of Columbia v. Hechinger Props. Co., 197 A.2d 157, 160 (D.C. 1964) (citing Howard v. Milwaukee & St. Paul R. Co., 101 U.S. 837 (1879).

Under the Bankruptcy Code, BMW's security interest in the Car was perfected "once it was entitled to priority against a hypothetical subsequent judicial lien." In re Dorton, 327 B.R. at 17; 11 U.S.C. § 547(e)(1)(B) ("a transfer of a fixture or property other than real property is perfected when a creditor on a simple

---

[3] However, "the time within which those acts must be done is governed by federal, not state, law, when the issue is the voidability of a preference under the Bankruptcy Code." Fidelity Fin. Servs., Inc., 522 U.S. at 213 n.1.

contract cannot acquire a judicial lien that is superior to the interest of the transferee"). Under common law principles, BMW's security interest attached on October 13, 2003, with the sale and delivery of the Car to the Debtor. In re Dorton, 327 B.R. at 16 n.2 (citing McCarthy v. Imported Cars of Md., Inc. (In re Johnson), 230 B.R. 466, 468-69 (Bankr. D.D.C. 1999)).

On the date the security interest attached, the common law rule of first in time, first in right entitled BMW's security interest to priority against "a creditor on a simple contract" seeking a subsequent judicial lien. 11 U.S.C. § 547(e); see Hechinger Props. Co., 197 A.2d at 160. Therefore, the common law dictates that BMW's security interest "was perfected, it was choate, at [the time of attachment] . . . and no further action was necessary to perfect it." Hechinger Props. Co., 197 A.2d at 160.

However, as noted above, if a statute varies the common law rule, the statutory requirement may displace the common law principle of first in time, first in right. See Franklin Inv. Co., Inc., 404 A.2d at 540. The District of Columbia has codified two statutes that address perfection and priority of security interests in consumer-purchased motor vehicles: (1) the District of Columbia's certificate of title statute, D.C. Code § 50-1201, et seq. and (2) the District of Columbia's Uniform Commercial Code ("UCC"), D.C. Code § 28:1-101, et seq.. The Court addresses these statutes in turn.

**1. The Certificate of Title Statute**

Under the District of Columbia's certificate of title statute,

> [d]uring the time a certificate is outstanding for any motor vehicle[,] . . . no lien against such motor vehicle . . . shall be valid except as between the parties and as to other persons having actual notice, unless and until entered on such certificate as hereinafter set forth.... The filing provisions of Article 9 of Subtitle I of Title 28 of the District of Columbia Official Code do not apply to liens recorded as herein provided, and a lien has no greater validity or effect during the time a certificate is outstanding for the motor vehicle or trailer covered thereby by reason of the fact that the lien has been filed in accordance with that article.

D.C. Code § 50-1202 (emphasis added). Thus, the certificate of title statute expressly governs the means by which perfection of a motor vehicle occurs "[d]uring the time a certificate is outstanding." Id.

Although the certificate of title statute does not define "outstanding," the parties agree, as did the Bankruptcy Court, that a certificate becomes "outstanding" when DMV issues the certificate. See Appellant's Br. at 17 (disagreeing with decision in Albert v. Nissan Motor Acceptance Corp. (In re Waiters), Civil No. 02-1588 (RWR) (D.D.C. July 12, 2004) that a certificate can be "outstanding" before DMV issues it); Appellee's Br. at 7-8 (same); In re Dorton, 327 B.R. at 18 (same); see, e.g., Vanderbilt Mortgage & Fin., Inc. v. Griggs (In re Griggs), 965 F.2d 54, 56 (6th Cir. 1992) (Kentucky statute dictates certificate becomes "outstanding" at issuance); North v. Desert Hills Bank (In re North), 310 B.R. 152, 160 (Bankr. D. Ariz. 2004) (same with respect to Arizona

statute).

The certificate of title statute does not, however, address the question of perfection of a security interest in a car prior to the time the certificate becomes outstanding. The parties disagree about whether perfection should be able to take place by some other means during this earlier time period.

The Bankruptcy Court was correct that the certificate of title statute's silence regarding the period prior to the certificate's issuance did "not displac[e] . . . the common law rule," but rather left "it intact . . . ." In re Dorton, 327 B.R. at 23. As the Bankruptcy Court noted, the certificate of title statute "implicitly provide[s] that prior to issuance of a certificate[,] . . . the only required step to perfect a security interest in a car is the common law requirement." Id. The common law rule simply requires that the security interest have attached prior to the assertion of a competing lien. In this case, no competing liens attached prior to the time the Debtor took possession of the Car. Accordingly, under the common law, BMW had a perfected interest in the Car at the time the Debtor took possession.

The Trustee contends that since the certificate of title statute is silent regarding perfection during the time period prior to issuance of the certificate of title, "there is no way to perfect a security interest in a consumer-purchased car prior to the issuance of a certificate." Appellant's Br. at 6. However,

under DC law, the rule of first in time, first in right is only displaced "where statute varies the common law rule." Franklin Inv. Co., 404 A.2d at 540 (citations omitted) (emphasis added). Because the plain language of the certificate of title statute does not set forth any requirements for perfection of a lien prior to issuance of a certificate, it cannot possibly "vary" the common law rule for perfection during that time. Indeed, as noted earlier, the statute does not even explicitly address perfection during that time period.

Moreover, had the legislature wished to allow perfection to occur only during the time the certificate is outstanding, it could have so provided in the express language of the statute. See, e.g., Ariz. Rev. Stat. Ann. § 28-2133(c) (Arizona statute providing that filing and issuance of a certificate of title is the "exclusive" means for "giving constructive notice of a lien or encumbrance on a vehicle required to be titled and registered under" Arizona law); Or. Rev. Stat. § 803-0.97 ("(1) Except as provided in subsection (5) of this section, the exclusive means for perfecting a security interest in a vehicle is by application for notation of the security interest on the title in accordance with this section."); Union Bank & Trust Co., Erie v. Baker (In re Tressler), 771 F.2d 791, 793 (3d Cir. 1985) (finding unambiguous a Pennsylvania motor vehicles statute which stated that notation of a security interest on the certificate of title was the exclusive

means of perfection). No such exclusivity language is contained in the D.C. statute.

In sum, the common law and the certificate of title statute work in concert with each other to allow for protection of a creditor's security interest, with the common law governing the period prior to issuance of the certificate of title and the statute governing the period after issuance of the certificate of title.

The Court must now look to the second relevant statute, Article 9 of the UCC, to determine if it displaces the common law rule for perfection.

**2. Article 9 of the UCC**

**a. Perfection of the Security Interest**

Article 9 of the UCC, titled "Secured Transactions," also applies to security interests created by individual debtors in motor vehicles. UCC § 9-101 et seq.; D.C. Code § 28:9-101 et seq.. Under D.C. Code § 28:9-308(a), which is identical to § 308(a) of Article 9 of the UCC, "a security interest is perfected if it has attached and all of the applicable requirements for perfection in §§ 28:9-310 through 28:9-316 have been satisfied." The relevant provisions of D.C. Code § 28:9-311 state:

> (a) . . . the filing of a financing statement is not necessary or effective to perfect a security interest in property subject to:
>
> . . .
>
> (2) the provisions of section 50-1201 et seq. [the

> certificate of title statute];
>
> . . .
>
> (b) Compliance with the requirements of a statute, regulation, or treaty described in subsection (a) for obtaining priority over the rights of a lien creditor is equivalent to the filing of a financing statement under this article. Except as otherwise provided in subsection (d) and §§ 28:9-313 and 28:9-316(d) and (e) for goods covered by a certificate of title, <u>a security interest in property subject to a statute</u>, regulation, or treaty <u>described in subsection (a)</u>[i.e., the certificate of title statute] <u>may be perfected only by compliance with those requirements</u>, and a security interest so perfected remains perfected notwithstanding a change in the use or transfer of possession of the collateral.

D.C. Code § 28:9-311 (emphasis added).[4]

The parties agree that motor vehicles are "property subject to" the certificate of title statute. Under Article 9, a creditor may only perfect a security interest in a motor vehicle by complying with the certificate of title statute's requirements.

The Trustee's argument regarding Article 9 is similar to his argument relating to the certificate of title statute. He asserts that the language of Article 9 – that perfection occurs "only by compliance with those requirements [in the certificate of title statute]" – means that construed together, the UCC and the certificate of title statute "provide the exclusive means to perfect a security interest in a car: notation of the security

---

[4] D.C. Code § 28:9-311(b) gives statutory exceptions to perfecting via the certificate of title statute, i.e., "subsection (d) and §§ 28:9-313 and 28:9-316(d) and (e)"; however, none of those exceptions apply in this case. <u>See</u> D.C. Code §§ 28:9-311, 28:9-313, 28:9-316.

interest on the certificate of title," and that "they do not allow the common law to provide an alternative means of perfection before a certificate of title is issued." Appellant's Br. at 7.

However, the UCC specifically states that "[u]nless displaced by the particular provisions of this subtitle, the principles of law and equity . . . shall supplement" the U.C.C.. D.C. Code § 28:1-103. There is nothing in Article 9 that displaces the common law principles applicable in this case. Since Article 9 refers to the certificate of title statute to determine perfection and, as explained above, under the certificate of title statute, the common law remains intact prior to issuance of the certificate, the common law supplements, and does not displace, the UCC with respect to perfection of a security interest. In re Dorton, 327 B.R. at 22.

Like the certificate of title statute, Article 9 does not "vary" or "displace" the common law requirements for perfection. Therefore, the common law rule of first in time, first in right governs from the time the Debtor took possession of the Car until the time the certificate issued. On October 13, 2003, BMW's interest was perfected under the common law upon attachment and transfer of the Car to the Debtor. On December 24, 2003, when the DMV issued the certificate noting BMW's interest, perfection continued under the certificate of title statute. Therefore, BMW

continually perfected[5] its interest in the Car from the moment the Debtor took possession of it through and after the issuance of the certificate.

**b. Comment No. 5 to Section 9-311 of the UCC Is Inapplicable to this Case**

Appellant further argues that Comment No. 5 to § 9-311 of the UCC makes clear that there should be a "gap period" under the certificate of title statute during which a creditor's security interest may not be perfected. Comment No. 5 states:

> For example, statutes under which perfection does not occur until a certificate of title is issued will create a gap between the time that the goods are covered by the certificate under Section 9-303 and the time of perfection. If the gap is long enough, it may result in turning some unobjectionable transactions into avoidable preferences under Bankruptcy Code Section 547. (The preference risk arises if more than 10 days (or 20 days, in the case of a purchase-money security interest) passes between the time a security interest attaches (or the debtor receives possession of the collateral, in the case of a purchase-money security interest) and the time it is perfected.) Accordingly, the Legislative Note to this section instructs the legislature to amend the applicable certificate-of-title statute to provide that perfection occurs upon receipt by the appropriate State official of a properly tendered application for a certificate of title on which the security interest is to be indicated.

UCC § 9-311 cmt. 5(emphasis added).

However, as Judge Teel noted, Comment No. 5 "is inapplicable

[5] Under UCC § 9-308(c), a security interest is "perfected continuously if it is originally perfected by one method under this article and is later perfected by another method under this article, without an intermediate period when it was unperfected." As the Bankruptcy Court noted, the term "method" is sufficiently broad to include perfection via the common law's first in time, first in right rule.

to the District of Columbia statute, as under § 50-1201 et seq., perfection does occur prior to the issuance of a certificate of title." In re Dorton, 327 B.R. at 24 (emphasis in original).

**c. Relative Priority of Security Interests**

Article 9 also addresses the relative priority of security interests over judicial liens. With respect to the relative priority of a security interest and a lien creditor's rights (which include those of a judicial lien as described by § 547(e)(1)(B)), UCC § 9-317(a) provides in relevant part:

> (a) A security interest . . . is subordinate to the rights of:
>
> . . .
>
> (2) Except as otherwise provided in subsection (e), a person that becomes a lien creditor before the earlier of the time:
> (A) The security interest . . . is perfected[.]

D.C. Code. § 28:9-317.

The Trustee argues that "the bright line distinction between perfection (D.C. Code § 50-1202) and priority (D.C. Code § 28:9-317) further demonstrates that the common law rule . . . which draws no such distinctions, has no place here." Appellant's Br. at 15. He further argues that "[i]f the common law is the applicable rule for a security interest in a consumer-purchased car until a certificate of title is issued, Section 9-311's reference to compliance with the [certificate of title] statute as the exclusive means of perfection, and Section 9-317's list of priority rules, are superfluous and their terminology is inapt in the same

context," since the common law makes no distinction between perfection and priority. Id.

Despite the fact that there is no absolute distinction in the common law between perfection and priority, the common law and the UCC do not conflict. Both the common law rule and UCC § 9-317 yield the same result with respect to priority. See 327 B.R. at 19 (footnotes omitted) ("[F]rom the moment the debtor took possession of the car, BMW's security interest was "perfected" as that term is used in the UCC - one of the UCC ways for a security interest to attain priority over a judgment lien - and hence was "perfected" as that term is used in § 547(e)(1)(B).") Therefore, the UCC and the common law complement each other with respect to priority.

**C. An Avoidable Transfer Does Not Exist Because the Transfer Was Made Outside the Preference Period**

Under 11 U.S.C. § 547(b)(4)(A), "the trustee may avoid any transfer of an interest of the debtor in property . . . on or within 90 days before the date of the filing of the petition . . . ." 11 U.S.C. § 547(b)(4)(A). "[A] transfer is made . . . at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time . . . [and] the debtor has acquired rights in the property transferred." Id. §§ 547(e)(1)(B), (2)(A), (3).

In this case, the Debtor acquired rights in the property on the same date on which the transfer occurred, namely October 13, 2003, when he took possession of the Car. As explained above,

under the common law, perfection occurred on that same day. The Debtor petitioned for bankruptcy relief on January 30, 2004, which was more than 90 days thereafter.[6]

Accordingly, the transfer of BMW's security interest in the Car occurred outside of the preference period and is not avoidable by the Trustee as preferential.

## IV. CONCLUSION

For the reasons stated herein, the Court **affirms** the Bankruptcy Court's judgment.

An Order will issue with this Memorandum Opinion.

/s/
Gladys Kessler
United States District Judge

August 8, 2006

**Copies To: Attorneys of record via ECF**

[6] The petition was filed 109 days after the transfer occurred.