# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 ℭ𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued September 14, 2007    Decided November 23, 2007

No. 06-7155

KEVIN R. MCCARTHY, TRUSTEE,
APPELLANT

v.

BMW BANK OF NORTH AMERICA,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 05cv01409)

*Kevin R. McCarthy*, appearing pro se, argued the cause and filed the briefs for appellant.

*Ronald G. DeWald* argued the cause and filed the brief for appellee.

Before: HENDERSON, RANDOLPH and BROWN, *Circuit Judges*.

RANDOLPH, *Circuit Judge*: This appeal from the judgment of the district court affirming the decision of the bankruptcy judge presents a single issue: whether in the District of Columbia, a security interest in an automobile may

2

be perfected under the common law before it has been perfected pursuant to statute by being entered on the certificate of title.

Kevin R. McCarthy is the trustee of Philip W. Dorton's estate under Chapter 7 of the Bankruptcy Code (11 U.S.C.). The estate's only asset is a 2000 BMW 328i. Dorton and another individual jointly purchased the car on October 13, 2003. In financing their car, the co-owners granted a security interest to the dealer, who immediately transferred it to BMW Bank of North America. For reasons that are not clear, the Department of Motor Vehicles ("DMV") did not issue a certificate of title until December 24, 2003. The certificate of title contained a notation of BMW's security interest. Dorton filed for Chapter 7 bankruptcy on January 30, 2004, listing the car as the bankruptcy estate's only asset. Allowed proofs of claim against the estate totaled approximately $20,000.

The trustee brought an adversary proceeding and moved for summary judgment, invoking 11 U.S.C. § 547. This provides that the trustee may "avoid any transfer of an interest of the debtor in property . . . made . . . on or within 90 days before the date of the filing" of the bankruptcy petition, 11 U.S.C. § 547(b)(4)(A), unless the transfer created "a security interest in property acquired by the debtor . . . that is perfected on or before 20 days after the debtor receives possession of such property," *Id.* § 547(c)(3)(B) (2000).[1]  Whether BMW perfected its security interest outside the 90 day window when Dorton took possession of the car, or only later when the

---

[1] Congress amended Subsection (c)(3)(B) in 2005 to strike "20" and insert "30." *See* Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 1222, 119 Stat. 23, 196. This case deals only with the 20 day rule in effect at the time of the transaction.

3

certificate of title issued, turns on the law of the District of Columbia. *Fid. Fin. Servs., Inc. v. Fink*, 522 U.S. 211, 213 n.1 (1998). The bankruptcy judge, disagreeing with his opinion in *In re Johnson*, 230 B.R. 466, 470 (Bankr. D.D.C. 1999), held that BMW had perfected its security interest outside the 90 day period because, under D.C. common law, "'a prior lien gives a prior legal right ("first in time, first in right"), except where statute varies the common law rule.'" *In re Dorton*, 327 B.R. 14, 17 (Bankr. D.D.C. 2005) (emphasis omitted) (quoting *District of Columbia v. Franklin Inv. Co.*, 404 A.2d 536, 540 (D.C. 1979)). On review of the decision, the district judge agreed. District statutes had not displaced District common law, both judges ruled. It followed that BMW had perfected a common law lien at the time of the sale, that the perfected lien remained in effect until the certificate of title issued several months later, and that the trustee could not avoid BMW's security interest.

The correctness of those rulings depends upon Article 9 of the Uniform Commercial Code (UCC), D.C. Code §§ 28:9-301 to -322, and upon the District's provisions dealing with liens on automobiles (title statute), D.C. Code §§ 50-1201 to -1217. D.C. Code § 28:9-308(a) provides: "Except as otherwise provided in this section and § 28:9-309, a security interest is perfected if it has attached and all of the applicable requirements for perfection in §§ 28:9-310 through 28:9-316 have been satisfied." D.C. Code § 28:9-308(a). All agree that none of the exceptions to which § 28:9-308(a) refers is applicable here. Section 28:9-311(b) – one of the provisions mentioned in § 28:9-308(a) – states in relevant part that "a security interest in property subject to [§ 50-1201 *et seq.*] may be perfected only by compliance with those requirements." Section 50-1202, one of the statutes mentioned in § 28:9-311, provides as follows: "During the time a certificate is outstanding for any motor vehicle or trailer, no lien against

4

such motor vehicle or trailer . . . shall be valid except as between the parties and as to other persons having actual notice, unless and until entered on such certificate as hereinafter set forth."[2]  D.C. Code § 50-1202.

In holding that the common law "first in time, first in right" rule perfected the security interest during the period between the purchaser's taking possession of the car and the issuance of certificate of title, the district court reasoned that § 50-1202 operated only "[d]uring the time a certificate is outstanding," thus leaving a gap before then, a gap the common law could fill.  *In re Dorton*, 346 B.R. 271, 275 (D.D.C. 2006).  This interpretation is not cogent.  It reads out the portion of § 28:9-311(b) stating in the clearest possible terms that a security interest in a motor vehicle may be perfected in one way, and one way "only" – by complying with the requirements of the title statute.  Among those requirements are that the lien holder must pay a fee for recording the lien on a certificate, § 50-1212, and that the lien must be entered on the certificate by the recorder, § 50-1203.  It is no answer to say that because the "first in time, first in right" rule perfects a lien against an automobile only until issuance of a certificate of title noting the lien, the common law does not conflict with the UCC or the title statute.  Such a bifurcated system raises the prospect that a lien could be perfected for the initial period and then later become "unperfected" when, for instance, the title certificate omits the lien.  It also flies in the face of one of the principal purposes

---

[2] "Certificate" is defined as "a certificate of title for a motor vehicle or trailer issued by" the "Director of Vehicles and Traffic of the District of Columbia, including assistants or agents duly designated by the Mayor of the District of Columbia."  D.C. Code § 50-1201(b), (d).

5

of UCC Article 9: to "enforce the policy against secret liens" by demanding strict compliance with "filing or recording requirements." Permanent Editorial Board Commentary for the Uniform Commercial Code, Final Report, No. 6, § 9-301(1) (March 10, 1990). It upsets the settled understanding that "[n]ormally, under the law of the relevant jurisdiction, the perfection step would consist of compliance with that jurisdiction's certificate-of-title statute and a resulting notation of the security interest on the certificate of title." U.C.C. § 9-303 cmt. 3.[3] And it does not account for cases in which no one even bothers to apply for a certificate of title before bankruptcy. *E.g.*, *In re Johnson*, 230 B.R. at 470. In such cases, the district court's ruling would render noncompliance with the UCC and the title statute superfluous. Yet as we have said, compliance with Article 9 is designed to ensure public notice of security interests.

We recognize that a lender might be at the mercy of a dawdling DMV. The longer the delay in issuing the title certificate, the longer the lender is exposed. There is a solution to this problem, but it is legislative, not judicial. The Official Comment 5 to UCC § 9-311 recognizes that in jurisdictions in which a security interest is perfected by notation on the certificate of title, there will be a gap between the debtor's taking possession of the automobile and the issuance of the title. The solution proposed in the Official Comment is not application of the common law but an amendment to the title statute so that it would provide as

---

[3] In interpreting the UCC, this court and other courts have found the Official Comments to the UCC persuasive. *See Goldstein v. Madison Nat. Bank of Wash., D.C.*, 807 F.2d 1070, 1074 (D.C. Cir. 1986); *see also Guardian Life Ins. Co. of Am. v. Weisman*, 223 F.3d 229, 231 (3d Cir. 2000); *JOM, Inc. v. Adell Plastics, Inc.*, 193 F.3d 47, 57 n.6 (1st Cir. 1999) (per curiam).

6

follows: "perfection occurs upon receipt by the appropriate State official of a properly tendered application for a certificate of title on which the security interest is to be indicated."[4] Some states have taken this course. *See In re Horner*, 248 B.R. 516, 518 (Bankr. N.D. W. Va. 2000). The District of Columbia has not. BMW therefore did not perfect its security interest within the time required, and under 11 U.S.C. § 547(b) the trustee was entitled to avoid any transfer of interest in the automobile to BMW.

*Reversed and remanded.*

---

[4]The Official Comment states:

> [S]tatutes under which perfection does not occur until a certificate of title is issued will create a gap between the time that the goods are covered by the certificate under Section 9-303 and the time of perfection. If the gap is long enough, it may result in turning some unobjectionable transactions into avoidable preferences under Bankruptcy Code Section 547. (The preference risk arises if more than 10 days (or 20 days, in the case of a purchase-money security interest) passes between the time a security interest attaches (or the debtor receives possession of the collateral, in the case of a purchase-money security interest) and the time it is perfected.) Accordingly, the Legislative Note to this section instructs the legislature to amend the applicable certificate-of-title statute to provide that perfection occurs upon receipt by the appropriate State official of a properly tendered application for a certificate of title on which the security interest is to be indicated.

U.C.C. § 9-311 cmt. 5.